UNITED STATES of America, Appellee,

v.

Rose Mary FOOTE, Appellant.

UNITED STATES of America, Appellee,

v.

Wayne Anthony GARDINER, a/k/a Paul Fabian Bassil, Appellant.

Nos. 90–5065MN, 90–5111MN.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1990.

Decided Dec. 10, 1990.

Andrew H. Mohring, Minneapolis, Minn., for Foote.

Thomas H. Shiah, Minneapolis, Minn., for Gardiner.

Jeanne J. Graham, Minneapolis, Minn., for U.S.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellants Foote and Gardiner appeal their convictions and sentences for drug-related offenses. The alleged points of error are failure to sever their trials, evidentiary error, insufficiency of the evidence, and improper sentencing. Finding no merit in any of these claims, we affirm the Appellants' convictions and sentences.

## I. BACKGROUND

In January 1989, Foote and Gardiner were present during a valid search of an apartment rented in the name of a relative of Foote. Probable cause for the search was based on an informant's drug buys from Foote at the apartment, though the primary target of the search was Gardiner. At the time, Foote and Gardiner were dating, but Gardiner was known to Foote by the aliases Paul Fabian Bassil and "Gucci." Presumably Gardiner took these aliases because he was a fugitive from the law and justice.

Foote and Gardiner were sitting on a couch when the officers executing the warrant entered. A lockbox, a portfolio, and a .38 caliber pistol and ammunition were found underneath the couch at the end where Gardiner sat. The box contained some $500, cocaine, and paraphernalia commonly used for weighing and distributing cocaine. Two keys to the lockbox were discovered; one key was found in a purse with Foote's driver's licence, and the other was found on a key-ring belonging to Gardiner. The portfolio contained, among other things, Gardiner's false ID, large-sum cash receipts, and an address book with the names of drug dealers. Two vials of "crack" cocaine were recovered from a coffee table in front of the couch.

On this and other evidence, a grand jury indicted the Appellants on one count of possession with intent to distribute cocaine, one count to do the same as to "crack," and one count of conspiracy to do both. Gardiner was further indicted on three more counts connected to the firearm, including being a felon and a fugitive in possession of a firearm. Designated Clerk's Record at 1–4.

Prior to trial, Gardiner was interviewed by an investigator working on Foote's behalf. The product of that interview was a brief affidavit from Gardiner allegedly exculpating Foote from both knowledge of any drug activities and knowledge of the contents of the items discovered in the search of the apartment as they related to the drug trade. The affidavit stated that Gardiner would testify consistently with his affidavit at Foote's trial if the two were tried separately. Based on Gardiner's affidavit and the possibility that he would testify on Foote's behalf, the two repeatedly sought severance of their trials. However,

severance was also repeatedly denied by both the magistrate and the district court [1].

At trial, testimony from relatives of Foote and others connected both defendants to the drug trade, to the drug quantities charged in the indictment, and to the drug paraphernalia that was discovered in the searched apartment. Nevertheless, Foote hoped to distance herself from the incriminating evidence by eliciting testimony consistent with Gardiner's affidavit from the investigator who had interviewed him.

Though the district court admitted the affidavit, it refused to allow the investigator to testify after hearing his proffered testimony. The court determined that the prejudicial effect on Gardiner would substantially outweigh any probative value the testimony might yield as to Foote. Gardiner objected to the introduction of the affidavit itself on the grounds that he was not represented by counsel at the time he made it and on the grounds of its prejudicial impact. Gardiner and Foote argued for severance again on the grounds that the affidavit and testimony about it would irrevocably infect the trial to the detriment of both—of Gardiner by reason of prejudice to him, of Foote by her inability to introduce further exculpatory evidence.

Severance was denied and the case went to the jury, which returned verdicts of guilt on all counts as to each defendant. Pursuant to the Sentencing Guidelines, Foote was sentenced to 97 months and Gardiner to 270 months (substantially enhanced because of his weapon-related offenses and career offender status). The defendants have appealed both their convictions and sentences arguing numerous points of error.

## II. DISCUSSION

■ Foote and Gardiner suggest that the denial of severance was reversible error for several reasons. From Foote's vantage point, denial of severance prevented her from introducing testimony from the investigator (and perhaps Gardiner himself) rebutting her otherwise apparent connec-

tion to the drug conspiracy charged. From Gardiner's view, the admission of the affidavit was prejudicial because, despite its use in Foote's defense, it was evidence against him. The district court's decisions to allow joinder of the defendants, allow certain prejudicial evidence as to Gardiner, but to deny admission of certain other evidence because of unfair prejudice to him put both defendants in understandably despairing positions. But that does not mean that an error of law occurred.

■ Our review of joinder and severance questions, though circumspect, defers to the district court's judgment absent an abuse of discretion that can be said to have prejudiced the rights of a defendant, which question turns largely on "whether the jury could compartmentalize the evidence against each defendant." *United States v. Nevils*, 897 F.2d 300, 305 (8th Cir.) (citation omitted), *cert. denied sub nom. Braddock v. United States*, — U.S. —, 111 S.Ct. 125, 112 L.Ed.2d 93 (1990). We do not believe the jury had trouble compartmentalizing the evidence in this case as to each defendant.

The defendants were charged and convicted under identical drug counts in connection with evidence quite nearly the same as to each. "Persons charged with a conspiracy will generally be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts." *United States v. O'Meara*, 895 F.2d 1216, 1218 (8th Cir.) (citations omitted), *cert. denied*, — U.S. —, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). As for the three weapon counts and the evidence involving the weapon as to Gardiner, we are confident no problem existed for the jury because of disparity or "spillover" of the evidence on that point. Foote was not charged with a weapon violation, and any evidence on that point was necessarily part of the weapon case against Gardiner. On the whole, we are satisfied that the district court's denial of severance did not work a clear prejudice against ei-

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

ther Foote or Gardiner and was not an abuse of discretion.

The defendants suggest, however, that the district court's evidentiary decisions with respect to the allegedly exculpatory evidence as to Foote in the Gardiner affidavit and the potential testimony of the investigator demonstrate the compelling need for severance of their trials. Their suggestion, as we pointed out above, is that Foote was denied the opportunity to present exculpatory evidence, yet Gardiner was prejudiced by the introduction of the exculpatory evidence that did come in, and that a severance would have remedied the alleged errors. We disagree. "Delicate judgments about the nature of the evidence are originally matters for the trial court. We will reverse a decision not to sever ... where our review of the record convinces us that the trial court's assessment of the prejudice present was clearly wrong." *Nevils,* 897 F.2d at 305 (citations omitted). Not only are we unconvinced that the district court was clearly wrong, but we also think the district court did an admirable job of balancing the interests of both defendants. On the one hand, Foote was able to present exculpatory evidence in the form of the Gardiner affidavit, while on the other, the jury was not bombarded with cumulative evidence on the point unfairly prejudicial to Gardiner.[2]

Foote, however, still suggests that the district court wrongly joined the defendants because there was a clear chance of exculpatory evidence being presented if the trials were severed. That is, Gardiner (and/or the investigator) would have testified at her separate trial as to her innocence. Here too, we disagree. "Error oc-

curs when the defendant can show that a co-defendant would have testified and that testimony would have been exculpatory." *Id.* (citing *United States v. Sweeney,* 817 F.2d 1323, 1326 (8th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 141 (1987)).

We will assume that Gardiner's affidavit is sufficient evidence that he would have testified. Yet, that alone does not answer whether his testimony would have been exculpatory. Certainly that is a determination first for the trial court; and our review must bear in mind the wide latitude ordinarily given to evidentiary decisions. The circumstances and record of this case do not satisfy the requirement that the testimony of Gardiner would have been exculpatory. All that Gardiner could have really testified to (as Foote claims the investigator would have also testified) was that Foote was not involved in any drug transactions. In essence, that claim came before the jury in the form of Gardiner's affidavit.

The question of whether severance should be granted cannot be answered in isolation by considering only the allegedly exculpatory evidence. The answer comes from examining the underlying acts which support the charges levied against the defendants, the nature of the evidence which the government has to prove those charges, and finally the nature of the exculpatory evidence. The last item should be able to meet and genuinely call into doubt the second by more than mere denial before the government is required to make separate and duplicative cases against co-

2. Gardiner argues that the affidavit alone was prejudicial. And, of course, it was. Any evidence *against a defendant is prejudicial.* The question is whether it is *unfairly* prejudicial. *See* Fed.R.Evid. 403. The district court's authority to make that determination in the first instance is very broad. We do not think that its conclusion here *that the affidavit could be introduced because it was not unfairly prejudicial, while the investigator's testimony could not be introduced because it was unfairly prejudicial, was an abuse of its discretion.*

The affidavit *is rather benign as to both parties,* though it does offer some help to Foote's

claim of innocence. *See, infra,* note 5. The proffered testimony of the investigator, however, *offers little additional help to Foote's* cause. *See* Trial Transcript, Vol. III at 131–155. Even the potential for *unfair* prejudice to Gardiner seems to us slight. Thus, the record evinces, if anything, the possibility that both the affidavit and investigator's testimony could have come into evidence. Despite our view of the evidence, the cold record cannot support reversing the evidentiary decision of the district court as an abuse of discretion.

conspirators.[3] Severance is not mandated simply because a codefendant might testify and thereby only "increase the chances of acquittal or tend to rebut some aspect of the government's case." *United States v. Reed*, 733 F.2d 492, 508 (8th Cir.1984). Exculpation is required. *Id.* The determination that the district court must make is whether joinder results in "real prejudice" to the party requesting severance. *See United States v. Starr*, 584 F.2d 235, 239–40 (8th Cir.1978) (severance mandated by prejudice to defendant because coconspirator recanted grand jury testimony that was the basis of the indictment against the defendant), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). *See also United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir.1986) (listing factors for district court to consider in severance request on grounds of potential testimony of codefendant).[4]

We are satisfied that here the district court carefully and correctly weighed the relative rights and prejudices involved in the joinder of the defendants in light of the evidentiary decisions to be made. The nature of Foote's exculpatory evidence would have been testimony from Gardiner as to her innocence. She was largely able to make that argument to the jury by use of the affidavit, which laid out her theory of innocence—her boyfriend and coconspirator denied her participation in any drug activities. The district court denied her severance and thereby an opportunity to elaborate on her theory. In that respect, this case more nearly resembles *Reed* than it does *Starr*. Because of the substantial evidence tying Foote to the conspiracy and drug trade charged in the indictment, we cannot conclude that she suffered prejudice by the denial of severance because Gardiner's (and the investigator's) testimony would not have been sufficiently exculpatory. *See Reed*, 733 F.2d at 507–08. Thus, we conclude that the district court did not abuse its discretion.

 Finally, on the severance and affidavit issue, Gardiner argues that severance was required because the affidavit prejudiced his rights against self-incrimination and was inadmissible. We have doubts that the affidavit actually incriminated him as part of Foote's defense. It says only that, if Gardiner's trial were separate from Foote's, he would testify that Foote had nothing to do with any drug trade.[5] The inference might be that Gardiner did have

---

**3.** We have serious doubts that a bald assertion by one defendant that he or she will testify as to the innocence of another can be said to be sufficiently exculpatory to mandate severance. The preference for trying coconspirators together, particularly where the evidence against them is from the same underlying circumstances, *see O'Meara*, 895 F.2d at 1218, would be too easily avoided if mere claims of the innocence of one by another were taken as truly exculpatory, absent allegations of alibi or like defenses that specifically deny or challenge the particular elements of the crime that the government must prove. Of course, testimony of innocence can be said to go to the knowledge or intent element of a crime. We do not dispute this. However, the question of whether that testimony will mandate severance cannot be answered affirmatively without closer examination in light of the circumstances of a particular case. In this case, the allegedly exculpatory testimony that Foote hoped to elicit from Gardiner, in light of the evidence against her to begin with, did not mandate severance.

**4.** Those factors are:

(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3)

the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial. Once the defendant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion. *Machado*, 804 F.2d at 1544 (citations omitted).

**5.** The substance of the affidavit is as follows:

I, Wayne Anthony Gardiner, being duly sworn, do state and swear that, if my federal drug charge trial were separated from the trial of Rose Mary Foote, I would testify truthfully that Rose Mary Foote had nothing to do with any drugs, drug money, transportation of drugs, or knowledge of any key to any container, or knowledge of any container containing drug money, drug paraphernalia, or drugs, that I have no knowledge and have never seen Rose Mary Foote take part in, aid, or conspire in any illegal drug dealing.

Affidavit of Wayne Anthony Gardiner, Trial Transcript, Vol. V at 79–80.

something to do with some drug trade, but that is not the equivalent of a violation of Gardiner's rights against self-incrimination.[6] The affidavit might have been against his interests, but its use did not violate the Fifth Amendment.

■ Gardiner also claims the affidavit's admission was evidentiary error. We disagree. The affidavit was a statement against interest sufficiently reliable and correctly admitted under Fed.R.Evid. 804(b)(3). Had separate trials been granted, the affidavit could have come into evidence as part of the prosecution's case-in-chief as a statement by a party-opponent. Fed.R.Evid. 801(d)(2)(A). Therefore, the affidavit would likely have been before a jury, whether or not severance was granted. Severance was not required to avoid prejudice to Gardiner or to avoid denial of his right against self-incrimination.

■ As noted throughout our opinion, the ultimate question in a severance claim at trial and on appeal is one of prejudice. The burden on the defendant is great to show prejudice and an abuse of discretion where the district court denied severance. *See Reed,* 733 F.2d at 508 (citations omitted). On this record and for the many reasons discussed, we conclude that the defendants failed their burden. We hold that neither Foote nor Gardiner was prejudiced by denial of their severance motions and that the district court did not abuse its discretion by that denial.

■ Next, Gardiner advances an argument that the evidence adduced at trial was insufficient to support the verdicts against him and that his motion for judgment of acquittal was wrongly denied. His burden is to demonstrate that, despite viewing the evidence in a light most favorable to the government and drawing all reasonable inferences to support the jury's verdict, the jury could still have entertained a reason-

able doubt as to his guilt. *United States v. Lara,* 891 F.2d 669, 672 (8th Cir.1989). Our review of the record on this point leaves us with little enough doubt to obviate the need for a recitation of the evidence. The jury's verdicts against Gardiner are supported by evidence which would leave no room for a reasonable doubt.

■ Remaining are the defendants' quarrels with their sentences. Foote complains that the evidence does not show a connection between her and the drug quantities involved to support her sentence. To the extent that this argument alleges error by the district court for failure to depart from the guidelines, we cannot entertain it. *See United States v. Evidente,* 894 F.2d 1000, 1004 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). To the extent that the argument alleges error for lack of evidence to support the range assigned, we note that the district court may consider quantities reasonably foreseeable to the defendant. U.S. S.G. § 1B1.3(a)(1); *United States v. Drew,* 894 F.2d 965, 973 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). In fact, here, Foote can be said to have had constructive possession of the quantities seized at the apartment anyway. Her Base Offense Level was not derived, nor her sentence given, in error.

■ Gardiner complains that his sentence violates the Eighth Amendment's proscription of cruel and unusual punishment by enhancement of his sentence under the Career Offender provision, U.S.S.G. § 4B1.1. We agree with the Tenth Circuit that, as a matter of law, sentences under the Guidelines are sentences within statutorily prescribed ranges and therefore do not violate the Eighth Amendment. *See United States v. Newsome,* 898 F.2d 119, 121–22 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 207, 112 L.Ed.2d 167 (1990). As a

---

**6.** Gardiner suggests in his brief that the affidavit was made in violation of his right to counsel because it was made while he was in custody without counsel being present. We note that Gardiner was not interrogated by, nor the affidavit made by, the government; it was taken down and made by an investigator working for the public defender representing Foote. The investigator made plain to Gardiner the purpose of the affidavit. We see no right to counsel issue. The circumstances surrounding the taking of the affidavit might go to its reliability as per Fed.R.Evid. 804(b)(3), which we discuss below.

matter of fact, nor does Gardiner's particular sentence.

## III. CONCLUSION

Finding no error in the denial of severance, no evidentiary error, sufficient evidence to support the convictions of Gardiner, and no sentencing error, we affirm the convictions and sentences of Foote and Gardiner.