# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1529

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Robert Lee Chauncey, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: October 19, 2004
Filed: August 25, 2005(Corrected: 08/30/05)

———————

Before COLLOTON, LAY, and GRUENDER, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Robert Lee Chauncey was charged with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting that offense, in violation of 18 U.S.C. § 2. He moved to suppress statements and evidence obtained after his arrest, contending that there was no probable cause to justify the arrest and a subsequent search, but the district court[1] denied Chauncey's motion. After a jury trial, Chauncey was convicted of possession with intent to distribute

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

marijuana and sentenced to 100 months' imprisonment. He appeals his conviction, and we affirm.

I.

On May 12, 2003, Chauncey drove his companion, Mary Fast Horse, to a house in Mission, South Dakota. While Chauncey waited in the van, Fast Horse purchased approximately two ounces of marijuana for $240, apparently intending to keep one ounce for personal use and to sell the other ounce later that day in Winner, South Dakota, where Chauncey knew of a potential customer. On their way to Winner, a South Dakota Highway Patrolman, Pete Eng, encountered the vehicle and noticed that it had expired license plate tags. When Chauncey and Fast Horse pulled into an auto salvage lot, Eng followed them and initiated a conversation with Chauncey, who was just exiting the vehicle.

Chauncey told Eng that the van had been purchased recently by Mary Fast Horse. He produced a bill of sale and an expired insurance card for the vehicle, but admitted that he did not have a valid driver's license. Eng asked Chauncey to sit in the passenger seat of his patrol car while he investigated the documents. While Chauncey was still seated in the car, Eng approached the passenger side of the van and noticed Mary Fast Horse closing a drawstring bag in her lap. He also noticed a strong odor of raw marijuana emanating from the window. Eng then seized and examined Mary Fast Horse's purse, confirmed that it contained marijuana, and proceeded to handcuff both Fast Horse and Chauncey while he searched the van.

Inside the van, Eng found marijuana seeds and stems in the carpet near the van's front passenger seats. He also found a scale inside a grocery bag that was hooked to the passenger seat armrest and several sandwich bags on the floor of the van. Mary Fast Horse's purse also contained marijuana roaches and a roach clip. Eng searched Chauncey, but found no marijuana or paraphernalia on his person.

Chauncey was arrested and transported to the Winner Jail, where a drug task force officer advised Chauncey of his *Miranda* rights. Chauncey waived those rights and described to the agent how the marijuana found in Fast Horse's purse had been acquired, also admitting that he and Fast Horse previously had sold marijuana that was purchased with money from Fast Horse's welfare check. In addition, Chauncey submitted to a urinalysis, which later tested positive for marijuana. These statements and the urinalysis results were subsequently introduced at trial.

During the jury trial, the government also offered the testimony of Mary Fast Horse, who testified that Chauncey had encouraged her to buy an extra ounce of marijuana, promising to "make [her] money back" in Winner. The jury was instructed to consider whether Chauncey should be convicted of possession with intent to distribute, aiding and abetting such possession, or a simple possession (which was a lesser included offense). The jury found Chauncey guilty of possession with intent to distribute.

The United States Probation Office prepared a pre-sentence report recommending that Chauncey be sentenced as a career offender pursuant to USSG § 4B1.1, due to his prior convictions for distribution of marijuana and involuntary manslaughter.[2] Given the statutory maximum penalty of 10 years, the career offender guideline established a total offense level of 24, a criminal history category of VI, and a sentencing range of 100-125 months. The court denied Chauncey's motion for downward departure and sentenced him to a term of 100 months' imprisonment.

---

[2]Chauncey's criminal history report also included three prior convictions for driving while under the influence, a conviction for failure to appear, a revocation of probation in 2002 "[d]ue to a plethora of noncompliance," and commission of the instant offense within two years following his most recent release from custody. (PSR ¶¶ 28-37).

II.

A.

On appeal, Chauncey argues that his post-arrest statements and urinalysis should have been suppressed, because the arrest was made without probable cause. In considering the district court's denial of the motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. Petty*, 367 F.3d 1009, 1011 (8th Cir. 2004). We conclude that probable cause supported the arrest.

Probable cause to arrest exists when there is "a reasonable ground for belief of guilt," *Brinegar v. United States*, 338 U.S. 160, 175 (1949), that is "particularized with respect to the person to be searched or seized." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (internal citation omitted). The existence of probable cause must be "viewed from the standpoint of an objectively reasonable police officer." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In assessing the question of probable cause in this case, we consider whether the facts and circumstances are sufficient "to warrant a man of reasonable caution in the belief that" Chauncey was involved in the commission of a crime. *Brinegar*, 338 U.S. at 175-76.

The facts in this case fall somewhere between two relevant decisions of the Supreme Court. In *United States v. Di Re*, 332 U.S. 581, 594 (1948), the Court held that probable cause was lacking to arrest a passenger of a car who was present during a sale of illegal gasoline ration coupons. The Court reasoned that the passenger's presence was the only evidence linking him to the crime, and that even his presence was offset by the fact that an informant had singled out the driver of the car as the

-4-

guilty party. More recently, in *Maryland v. Pringle*, the Court distinguished *Di Re* and held that there was probable cause to arrest all three occupants of a car after drugs were found beneath the back-seat armrest of the vehicle. 540 U.S. at 374. In *Pringle*, the Court noted that there had been no singling out of a guilty party as there had been in *Di Re,* and further noted that it was "reasonable for the officer to infer a common enterprise among the three" occupants. *Pringle,* 540 U.S. at 373.

Chauncey argues that as in *Di Re,* there is evidence here tending to point to another passenger, Mary Fast Horse, as the guilty party: the marijuana and drug-related items were found in her purse. However, unlike *Di Re,* where there was no evidence to indicate that the passenger was aware of the scheme to sell counterfeit ration coupons, the officer confronting Chauncey had several pieces of evidence tending to suggest that there was a "common enterprise" between Chauncey and Fast Horse.

First, Chauncey was driving Fast Horse's van and knew enough about its ownership and registration status to suggest that he had more than a casual relationship with Fast Horse. More important, the officer testified that the scent of the marijuana in Fast Horse's purse could be detected from outside the window of the van. Given that the odor was strong enough for the officer to smell it outside the van, it was eminently reasonable for the officer to assume that the marijuana odor was present inside the van as well, and that Chauncey therefore had knowledge that Fast Horse was carrying marijuana. The officer also observed seeds, stems, and sandwich bags on the floor of the van, and a scale inside a grocery bag hooked to the passenger seat, thus giving further reason to believe that drug-related activity in the van was open and notorious. On balance, we believe that Chauncey's case is more like *Pringle* than *Di Re,* and that there was sufficient evidence of his knowledge and participation in the marijuana possession to suggest to an objectively reasonable officer that he was involved in the commission of a crime.

Alternatively, Chauncey's arrest was justified by probable cause to believe he committed the offense of driving without a license. South Dakota law authorizes an officer who has probable cause to believe that a driver has committed a traffic offense to arrest the driver and bring him before a magistrate. S.D. Codifed Laws §§ 32-2-9, 32-33-1. Arrests for traffic violations and other minor offenses are consistent with the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Despite the officer's uncontested authority to arrest for the traffic stop, Chauncey argues that the arrest was nonetheless invalid because the officer did not *intend* to arrest Chauncey for the traffic stop. The officer arresting Chauncey testified that he had decided not to arrest Chauncey for the offense of driving without a license, and the magistrate judge found that the officer did not form the intent to arrest Chauncey until the marijuana was discovered. We accept that factual finding, but the law is clear that the officer's subjective intent does not control whether there exists probable cause for an arrest. To the contrary, the Supreme Court has held that "a traffic-violation arrest . . . would not be rendered invalid by the fact that it was a 'mere pretext for a narcotics search,'" *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (quoting *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973)), and that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. Regardless what the officer intended, the traffic offense provided probable cause to arrest.

The Supreme Court's decision in *Knowles v. Iowa*, 525 U.S. 113 (1998), does not preclude an arrest of Chauncey based on his commission of a traffic offense. *Knowles* rejected the State's contention that a search could be justified based on the mere potential that an officer *could* have arrested a traffic offender for a traffic offense, even though the search in *Knowles* was preceded only by a citation. 525 U.S. at 115-16. The Court held that the search incident-to-arrest exception to the probable cause requirement was a "bright-line rule" that should not be extended to situations in which an arrest is not effected. *Id.* at 118-19. Chauncey, by contrast, was placed

under arrest, and the only question is whether there was probable cause to make the arrest. *Knowles* does not speak to that point.

Chauncey nonetheless attempts to liken his case to *Knowles* by suggesting that once the officer decided subjectively that he would not arrest Chauncey for driving without a license, the arrest was not "for" the traffic citation, and the officer no longer had authority to make the arrest on that basis. Whatever the officer's subjective intention, however, the record does not show that the officer had completed the traffic stop by the time he made a formal arrest of Chauncey. Chauncey was still in the officer's patrol car when the officer smelled marijuana in the van. The officer never indicated that the detention had ended, and, in fact, he did not finish preparing Chauncey's traffic citations until well after Chauncey had been arrested and taken to the Winner Jail. Thus, Chauncey's traffic violation is an independent ground that justifies the arrest and the search incident to the arrest.[3]

B.

We next consider Chauncey's contention that there was insufficient evidence to support his conviction, because the government failed to establish that he actually or constructively possessed marijuana. When reviewing a jury verdict for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and overturn the verdict only if we find that no reasonable jury could have adjudged the defendant guilty beyond a reasonable doubt. *United States v. Gray,* 369 F.3d 1024, 1028 (8th Cir. 2004).

---

[3]Chauncey argues, alternatively, that his post-arrest statements were coerced and involuntary because he reasonably believed that he was being promised leniency. The district court rejected this argument, finding that the agent made no such promise. Chauncey has not cited any convincing evidence that undermines this finding, and we conclude that the district court's credibility determination is not clearly erroneous.

Possession of drugs may be demonstrated by evidence of either actual or constructive possession. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). The government rested its prosecution of Chauncey on the theory that he constructively possessed marijuana, because he had both knowledge of the marijuana, and "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *Id.* (internal quotation omitted). Chauncey's knowledge of the marijuana is clear from his own testimony; he admitted at trial that he knew when he drove Mary Fast Horse to a residence in North Antelope that he was taking her there so that she could purchase marijuana. Chauncey argues that although he knew about the purchase, he never had "ownership, dominion, or control" over the marijuana.

The linchpin of the "ownership, dominion, or control" required for constructive possession is "not direct, physical control, but the ability to reduce an object to actual possession." *United States v. Quintanar*, 150 F.3d 902, 905 (8th Cir. 1998) (quoting *United States v. Holm*, 836 F.2d 1119, 1123 (8th Cir. 1988)). In demonstrating an ability to reduce an object to actual possession, "[i]t is enough if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer." *Id.* Even an intermediary who arranges a sale without ever physically controlling the substance can "constructively possess" the contraband. *E.g., United States v. Raper*, 676 F.2d 841, 848 (D.C. Cir. 1982).

We believe the evidence supports a jury verdict based on Chauncey's constructive possession. Mary Fast Horse testified that Chauncey directed her to get "another" ounce of marijuana during their visit to Winner, South Dakota, and that "he would make [her] money back" by selling it. According to Fast Horse, Chauncey even identified a particular person to whom he expected to sell the extra marijuana. From this testimony, a jury reasonably could have concluded that Chauncey had the

"ability to produce" the marijuana for a customer, and thus constructively possessed the marijuana.

Moreover, the verdict form by which Chauncey was convicted allowed the jury to return a guilty verdict based either on the charge that Chauncey possessed drugs with intent to distribute or on the charge of aiding and abetting Fast Horse's possession with intent. Although it is not clear from the verdict whether the jury accepted one theory or both, "[w]hen the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we cannot reverse the jury's general verdict of guilty." *United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996); *see Griffin v. United States*, 502 U.S. 46, 49-56 (1991) (explaining the history and narrow exceptions to this principle). Given Fast Horse's testimony that Chauncey encouraged her to acquire additional marijuana for sale, drove her to the location of the supplier, and identified a potential customer, the evidence also was sufficient to support a conviction for aiding and abetting Fast Horse's possession with intent to distribute marijuana. *See United States v. Nicholson,* 231 F.3d 445, 455-56 (8th Cir. 2000); *United States v. Atkins*, 473 F.2d 308, 310-11 (8th Cir. 1973).

C.

Chauncey next disputes several of the district court's rulings during the trial. First, he challenges the district court's decision to permit the government to introduce evidence of Chauncey's prior conviction for impeachment purposes. Chauncey does not dispute that the conviction, which was sustained in 1999 for distribution of a controlled substance, was admissible under Rule 404(b) in the government's case-in-chief. He argues that the conviction should have been excluded from cross-examination when Chauncey testified, because its value as impeachment evidence

was outweighed by its prejudicial effect. The district court denied Chauncey's motion in limine to exclude the evidence under Rule 609.

We conclude that the district court did not abuse its discretion in allowing use of the evidence for impeachment purposes. Under Rule 609(a)(1), "evidence that an accused has been convicted of [a crime punishable by death or more than one year in prison] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1). Here, the prior conviction already was admitted under Rule 404(b), and the danger of unfair prejudice by repetition of the evidence was negligible. The jury was instructed properly that it should consider the evidence only for its effect on credibility and not as proof of the crime. The conviction was relatively recent, and it was probative of Chauncey's credibility because of the "common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." *Cummings v. Malone*, 995 F.2d 817, 826 (8th Cir. 1993). Weighed against the minimal danger of unfair prejudice, it was reasonable for the district court to conclude that the probative value justified use of the evidence for impeachment, and we see no abuse of discretion.

Chauncey also argues that the court erred in denying his motion for a mistrial after a witness, Mary Fast Horse, alleged prior bad acts that had not been properly noticed under Rule 404(b). Under Rule 404(b), the government must "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The dispute centers on the following question and answer, which occurred during Fast Horse's testimony:

> Q. Ms. Fast Horse, has the defendant, Bob Chauncey, since the stop in Winner, since your charge and arrest, has he made any threats to you?

A.     He never directly threatened me himself, but he would tell me that his girls – his daughters would do anything he wanted them to do.

Q.     Did he ever say to you what would happen if he went to jail?

A.     If he went to jail?

Q.     Yes.

A.     *Well, if it was my fault that they would come after me. That it happened the time before.*

(T. Tr. at 86) (emphasis added).

Chauncey objected to the last answer, but the district court overruled the objection, and later denied Chauncey's motion for mistrial. Chauncey contends that the final part of Fast Horse's answer ("[t]hat it happened the time before") introduced evidence of a prior bad act without notice under Rule 404(b), and thus necessitated a mistrial. Chauncey argues that the court based its denial of the motion for mistrial on a faulty recollection of the testimony, citing the district court's comment that "I don't think it was a question from the prosecutor saying had he ever done this before. . . . It was sort of volunteered." (T. Tr. at 120).

We review the district court's decision to deny a motion for mistrial for abuse of discretion. *United States v. Johnston*, 353 F.3d 617, 622 (8th Cir. 2003). Initially, we observe that the district court's recollection of the testimony was not in fact "erroneous," as Chauncey asserts. The court accurately noted that the prosecution had not asked Fast Horse whether Chauncey had "ever done this before," but only whether Chauncey had threatened Fast Horse since his arrest in this case.

More to the point, we believe the disputed answer was admissible as an admission by Chauncey, not as evidence of a prior bad act under Rule 404(b). The

-11-

prosecutor asked whether Chauncey had threatened Fast Horse after Chauncey's arrest in this case, and Fast Horse's answer is best understood as reporting such a threat by Chauncey, to wit:  Chauncey said "that they would come after me," and "that it happened the time before."  Although the second part of the threat referred to a prior bad act by Chauncey, it was still part of a current threat designed to influence Fast Horse not to testify in this case.  As Fast Horse expressed it, Chauncey's threat used the fact that his daughters had retaliated on a previous occasion to make the current threat more credible.  Evidence of a defendant's threat against a witness is admissible to show consciousness of guilt, *United States v. Montano-Gudino*, 309 F.3d 501, 505 (8th Cir. 2002), and we thus find no abuse of discretion in the district court's decision to deny Chauncey's motion for mistrial.

D.

Chauncey also alleges violations of his rights under the Sixth Amendment, first contending that the court's interference with his cross-examination of witnesses violated his right to confrontation.  Cross-examination is a right guaranteed by the Sixth Amendment, *Davis v. Alaska*, 415 U.S. 308, 315 (1974), but the right is not unlimited, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  When a court imposes restrictions on cross-examination, we review for abuse of discretion and overturn the district court's ruling only on a showing of prejudice. *United States v. Love,* 329 F.3d 981, 984 (8th Cir. 2003).

Chauncey argues that his Sixth Amendment rights were violated by the trial court's general interference with his cross-examination of Mary Fast Horse. Chauncey alleges that the court undermined his defense by interrupting and cutting

off his lines of questioning. After reviewing the transcript of the trial, we disagree. The Confrontation Clause guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Chauncey was given ample opportunity to establish his defense through cross-examination, and was interrupted only when his questions became redundant and confusing.

Second, Chauncey asserts that the district court improperly excluded his proffered evidence that he did not test positive for drug use or smoke marijuana while released from custody prior to trial. While the Sixth Amendment does grant, to some extent, a right for an accused to present relevant evidence in his favor, that right is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). In this case, Chauncey argues that the court abused its discretion because his evidence was necessary to rebut Mary Fast Horse's allegation that he had supplied her with marijuana during the period of pre-trial release. Chauncey was allowed to testify that he did not *possess* marijuana while on pretrial release, and the court sustained an objection only when Chauncey sought to demonstrate that he did not smoke or test positive for drugs during that time. We conclude that the district court acted within its discretion by admitting evidence relevant to rebut the assertion that he distributed marijuana to Fast Horse (whether Chauney *possessed* marijuana that he could have distributed), but excluding evidence that addressed a different point (whether Chauncey *used* marijuana on release). The absence of marijuana *use* would not rebut the assertion that Chauncey *distributed* marijuana during the period in question.

E.

Chauncey next complains that the prosecution made improper remarks in closing argument by calling his version of events "preposterous" and by accusing the defense counsel of "trying to throw [the jury] a bone" by discussing a lesser included

offense in his closing argument. There was no objection to the first comment, so we review only for plain error, and we find none. The prosecutor was permitted to argue Chauncey's credibility based on the evidence, and it was not an obvious error for the district court to decline to interrupt the prosecutor's final argument. Even an attorney for the government is allowed some latitude in choosing words that he thinks will best persuade a jury to his party's view of the evidence.

Chauncey did object to the second comment, so the standard of review is whether he had demonstrated that the remarks were "improper and prejudicial to his right to a fair trial." *United States v. Bryant*, 349 F.3d 1093, 1096 (8th Cir. 2003). Considered in the context of the trial, including Chauncey's earlier argument that "at most" he was guilty of simple possession, we believe the remark was permissible as part of an argument against a verdict on the lesser included offense. We find no abuse of discretion in the district court's ruling.

F.

We reject Chauncey's contention that his sentence is grossly disproportionate to his crime in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. As support for his argument, he points to the much lighter sentence received by his companion, Mary Fast Horse, and to the fact that his sentence as a career offender is more than ten times greater than his sentence would have been without the career offender enhancement. But a defendant's sentence is not disproportionate merely because it exceeds his co-defendant's sentence, *United States v. Granados*, 962 F.2d 767, 774 (8th Cir. 1992), and the difference in sentences in this case was attributable largely to Fast Horse's decision to cooperate with authorities, and Chauncey's serious criminal history.

Given that a legislature constitutionally may punish a recidivist with a term of 25 years to life for theft of three golf clubs, *Ewing v. California*, 538 U.S. 11, 28-30 (2003), a term of life imprisonment without parole for possessing more than 650

grams of cocaine, *Harmelin v. Michigan*, 501 U.S. 957 (1991), and a term of life imprisonment with the possibility of parole after 12 years for obtaining $120.75 by false pretenses, *Rummel v. Estelle*, 445 U.S. 263, 276, 285 (1980), we conclude that a term of 100 months' imprisonment for Chauncey's felony drug trafficking offense is not "grossly disproportionate." *Ewing*, 538 U.S. at 30. *Cf. Solem v. Helm*, 463 U.S. 277, 295-303 (1983) (term of life imprisonment without parole imposed on non-violent recidivist for uttering a $100 "no account" check was unconstitutionally disproportionate). Although the instant offense involved trafficking a small amount of marijuana, "[p]ossession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population," *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring) (internal quotation omitted), and Chauncey's enhanced sentence based on his career-offender status "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *Ewing*, 538 U.S. at 30.

After his case was submitted, Chauncey moved to supplement his brief, arguing that the Supreme Court's recent decision in *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), demonstrated that he should not have been sentenced as a career offender under the sentencing guidelines. *Leocal* held that the crime of driving under the influence of alcohol and causing serious bodily injury could not be considered a "crime of violence" for purposes of 18 U.S.C. § 16, which controls whether an alien has committed an "aggravated felony" under the Immigration and Nationality Act. *Id.* at 383-84. Chauncey now argues that his involuntary manslaughter conviction, which resulted from driving while intoxicated, should not have been a "crime of violence" under USSG § 4B1.2(a)(2), which defines who is a "career offender" for purposes of the sentencing guidelines. Assuming, *arguendo*, that this argument was timely raised in a motion for leave to file a supplemental brief, *but see United States v. Smith*, No. 03-15299, 2005 WL 1662128, at *4 & n.1 (11th Cir. July 18, 2005) (per curiam), we find it to be without merit, because the guidelines define "crime of violence" more

broadly than does 18 U.S.C. § 16. *Leocal,* 125 S. Ct. at 383 n.7. We observed in *United States v. Newton*, 259 F.3d 964, 968 (8th Cir. 2001), that the commentary to § 4B1.2 specifically provides that "crime of violence" includes "manslaughter," *see* USSG § 4B1.2, comment. (n.1), and held that involuntary manslaughter is a "crime of violence." This holding is undisturbed by *Leocal*. *See also United States v. Jernigan*, 257 F.3d 865 (8th Cir. 2001) (per curiam) (holding that negligent homicide resulting from driving while intoxicated is a "crime of violence").

Chauncey also was granted leave to file a supplemental brief concerning *United States v. Booker*, 125 S. Ct. 738 (2005), which held that certain applications of the mandatory federal sentencing guidelines violated the Sixth Amendment, and adopted a remedy that rendered the guidelines essentially advisory. Chauncey raised no objection to his sentence in the district court based on the Sixth Amendment or the mandatory nature of the guidelines, so we review his sentence to determine whether it involved a plain error that warrants relief. *See* Fed. R. Crim. P. 52(b); *United States v. Pirani*, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc). Although a sentence based on the mandatory guidelines constitutes a plain error, Chauncey also must demonstrate a reasonable probability that he would have received a more favorable sentence under the advisory guideline regime, and that the court of appeals should exercise its discretion to correct the error. *Id*. at 552-54.

The district court sentenced Chauncey at the low end of the applicable guideline range of 100 to 125 months' imprisonment, but a sentence at the bottom of the range "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error." *Id*. at 553. Having reviewed the entire sentencing transcript and the record as a whole, *see United States v. Spigner,* No. 04-3031, 2005 WL 1797452, at *3 (Aug. 1, 2005), we find no specific reason to infer a reasonable probability of a more favorable sentence under the post-*Booker* regime. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the

-16-

appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." *Pirani*, 406 F.3d at 553 (internal quotation omitted).

Chauncey's supplemental brief also argues that his sentence is unreasonable with regard to 18 U.S.C. § 3553(a), *see Booker*, 125 S. Ct. at 765-66, because of the disparity between his sentence and Mary Fast Horse's sentence, and because of the nature and circumstances of his offense and personal history. We disagree. Chauncey's sentence was within the advisory guideline range, which a district court is required to take into account, 18 U.S.C. § 3553(a)(4), (5), and the other factors set forth in § 3553(a) do not weigh so strongly in favor of a lighter sentence that the advisory range can be considered unreasonable. In particular, we are not persuaded that the difference between sentences imposed on Chauncey and Fast Horse weighs at all against the reasonableness of the advisory range, because the sentences do not tend to create an "unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Chauncey had a significant criminal history, and the record does not show that Fast Horse had a "similar record." Fast Horse apparently pled guilty and cooperated with authorities, which often justifies a more favorable sentence, while Chauncey did not. These distinctions between the defendants undermine Chauncey's assertion that the 100-month sentence was unreasonable, and we conclude that the sentence passes muster under *Booker*.

Finally, Chauncey asserts in his supplemental brief that the district court's reliance on his involuntary manslaughter conviction to conclude that he was a career offender under the guidelines conflicts with the Supreme Court's recent holding in *Shepard v. United States*, 125 S. Ct. 1254 (2005). In *Shepard*, the Court clarified limitations on what evidence a district court may consider in determining whether a conviction for burglary qualifies as a violent felony under the Armed Career Criminal Act. *Id.* at 1257. *Shepard* is inapplicable here, because Chauncey admitted the fact

of his prior conviction for involuntary manslaughter by failing to object to the relevant portion of the presentence report, *United States v. McCully*, 407 F.3d 931, 933 (8th Cir.2005), and the district court correctly determined as a matter of law that involuntary manslaughter is a crime of violence. *Newton*, 259 F.3d at 968.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed. Chauncey's pending motion to file another supplemental brief is denied.

LAY, Circuit Judge, dissenting.

I would vacate and remand this case for re-sentencing because Chauncey's sentence was so grossly disproportionate to the offense that it violates the Eighth Amendment.

A sentence for a term of years is not immune from Eighth Amendment scrutiny. See Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003) (stating that it is "clearly established" that a "gross disproportionality principle is applicable to sentences for terms of years"). Likewise, sentences imposed under anti-recidivism statutes designed to meet out severe punishment on repeat offenders remain subject to Eighth Amendment scrutiny. See Solem v. Helm, 463 U.S. 277, 288-90 (1983) (stating "no penalty is *per se* constitutional"). In applying these principles, we have determined that a limited review does exist for sentences within statutory limits. See United States v. Richard, 872 F.2d 253, 255 (8th Cir. 1989) (reviewing sentence within statutory parameters for Eighth Amendment disproportionality, no violation);

<u>Woosley v. United States</u>, 478 F.2d 139, 147-48 (8th Cir. 1973) (en banc) (finding sentence within statutory parameters "disproportionate").[4]

In determining whether a sentence is grossly disproportionate to the crime, we look primarily to the gravity of the offense and the harshness of the penalty. <u>See</u> <u>Ewing v. California</u>, 538 U.S. 11, 23 (2003). Other relevant criteria in this review include an analysis of sentences imposed on other criminals in the same jurisdictions and sentences imposed for the same crime in other jurisdictions. <u>See</u> <u>Solem</u>, 463 U.S. at 292; <u>see also</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1000 (1991) (stating that proportionality review should be guided by "objective factors to the extent possible") (internal quotation marks and citations omitted) (Kennedy, J., concurring in part and concurring in judgment).

In the case at bar, Chauncey's crime was possessing marijuana with intent to distribute and aiding and abetting the same. The offense involved less than two ounces of marijuana – perhaps a few weeks' supply for an average user. Considering Chauncey's undisputed purpose was to help Mary Fast Horse obtain marijuana to alleviate the painful effects of her multiple sclerosis, this offense lacks the severity

---

[4]<u>United States v. Foote</u>, 920 F.2d 1395, 1401 (8th Cir. 1990), holds to the contrary. ("[A]s a matter of law, sentences under the Guidelines are sentences within statutorily prescribed ranges and therefore do not violate the Eighth Amendment." ). I note that <u>Foote</u> relied primarily on <u>United States v. Newsome</u>, 898 F.2d 119, 122 (10th Cir. 1990), which stands only for the proposition that sentences imposed in accordance with statutory limits do not *generally* constitute cruel and unusual punishment. <u>Id</u>. Though the difference between <u>Newsome</u> and <u>Foote</u> is slight, it is weighty since the Eighth Amendment is only applicable in a small number of extreme cases. <u>See</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003). To the extent that <u>Foote</u> extends beyond our general rule and forecloses, as a matter of law, any Eighth Amendment challenge whatsoever to a sentence within the appropriate guideline range, it conflicts with <u>Lockyer</u> and <u>Solem v. Helm</u>, 463 U.S. 277, 289-90 (1983), and ought be overturned.

typically associated with sentences of this length. The typical sentence for this crime under federal law, even for someone with Chauncey's criminal history, is usually six to twelve months of imprisonment.  See U.S.S.G. § 2D1.1(c).  Application of the Career Offender Guideline, see U.S.S.G. § 4B1.1, augmented Chauncey's sentence to 100 months of imprisonment – roughly ten times greater than the usual sentence. However, even after considering Chauncey's criminal history, a 100-month sentence is disproportionate.  Chauncey's first prior offense was involuntary manslaughter, which arose out of a car accident in 1990.  This offense, while violent, lacks the type of intent normally associated with a career offender and has never been repeated. Chauncey's second prior offense – selling one-quarter ounce of marijuana for fifty dollars in 1998 – lacks the severity, frequency, and gravity of the drug offenses that typically pepper the criminal histories of career offenders.

The glaring disparity between the sentence imposed upon Chauncey and that imposed upon Fast Horse bolsters my conclusion that Chauncey's sentence was disproportionate to his crime.  Fast Horse pled guilty to the exact same offense as Chauncey, yet she was sentenced only to two years of probation.  This sentence not only differs in duration, it differs in *kind* since Fast Horse served no time in prison. Undoubtedly her guilty plea motivated the prosecutor to grant some degree of leniency, but this alone cannot justify the severely disparate treatment in sentencing, and neither does Chauncey's criminal record.

Taken together, these factors warrant a holding that a 100-month sentence for possession with intent to distribute less than two ounces of marijuana is disproportionate to the offense.  As Chauncey points out, the Government can cite "no case that has approved a sentence as harsh" as Chauncey's "for possession with intent to distribute less than two ounces of marijuana."  Reply Brief at 25.

I respectfully dissent.

_____

-20-