# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1954

_____

United States of America

*Plaintiff - Appellee*

v.

Marlene Kalb

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 12, 2014
Filed: May 8, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge

Marlene Kalb, a lieutenant in the Helena-West Helena, Arkansas police department, was convicted by a jury of two counts of attempted extortion under color of official right, in violation of 18 U.S.C. § 1951(a), and two counts of attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846. The

district court[1] sentenced Kalb to a total of 30 months imprisonment and three years supervised release.  She appeals on the grounds that there was insufficient evidence to support her convictions.  We affirm.

The government presented the following evidence through testimony and audio recordings at Kalb's trial.  As part of a joint federal and state investigation into police corruption known as Operation Delta Blues, a drug trafficker from Helena-West Helena known as "CC" was recruited to help carry out stings against official targets. CC went to the Helena-West Helena police department on September 1, 2011 to talk with an officer he intended to pay to provide him with a police escort while he transported illegal drugs through town.  Corrupt officers in Helena-West Helena had been providing drug traffickers like CC with police escorts to protect them from being stopped by either legitimate law enforcement officers or other corrupt officers who would seize the drugs to sell or use themselves.

When he checked in at the front desk, CC was told he had an outstanding warrant for a suspended license. Worried that an arrest would alert local police to his cooperation with the FBI, he discarded the wire he was wearing in a bathroom where it was picked up by a state trooper working for the Bureau.  CC saw Marlene Kalb, a close family friend who attended Sunday dinners at his mother's house, as he left the bathroom.  Kalb knew about CC's drug dealing and had once arrested him for possession of marijuana.  CC asked Kalb to get rid of the warrant, and she agreed, following CC to the parking lot so he could pay her.  At some point, CC called an FBI agent and left the line open so the agent could listen in on his conversation with Kalb. When they arrived in the parking lot, CC gave Kalb the $500 he had received to give to a targeted officer.  Although she warned CC about surveillance cameras covering the parking lot, Kalb took the money.  She then escorted CC to his mother's house so

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

that other police officers would not stop him and execute the warrant. Later on, while in an agent's presence, CC called Kalb to thank her for taking the money and letting him out of the warrant.

A week later, on September 9, CC called Kalb and asked her to "trail him out." By that he meant that she should follow him in her police car as he drove drugs across town so he would not stopped by other officers. CC informed her he would be "loaded down," which he testified was code for carrying drugs. He explained he did not want to get harassed by police officers while he drove through town because the people supplying him with drugs "pay me too much money." Kalb said she would help him. On that day CC drove from Mississippi across the bridge over the Mississippi River to the Arkansas side where Kalb was waiting in uniform for him in her marked police car. Kalb followed CC as he drove about ten miles through Helena-West Helena to a gas station on the western edge of town. There, CC again wearing a wire, thanked her for helping him and emphasized that "this truck is loaded with . . . drugs." Kalb told him not to say anything more about it. At the end of the conversation, CC gave Kalb $500 for providing the escort.

CC called Kalb again on September 21 to set up a second escort for September 26, this time from the gas station on the western edge of Helena-West Helena to the Mississippi River bridge. Warning CC to watch out for a particular officer known for seizing drugs and money for personal gain, Kalb agreed to protect him. On September 26, CC called Kalb and told her "I got a shitload of cocaine with me today." He then drove to the gas station with a $500 roll of cash provided to him by the Bureau. Kalb was waiting for him in her marked police car and fell in behind him when he drove past her. They spoke on the phone for about twenty minutes as they drove to the bridge and Kalb instructed CC to drive within the speed limit at least one time. When CC gave Kalb the $500 at the end of the drive, she told him, "I love you too CC. You be careful. Thank you." She then called him a short while later to thank him and make sure he was okay.

In a statement she made following her arrest and after her waiver of <u>Miranda</u> rights, Kalb said she had known CC was a drug dealer and that he paid officers to protect his drug shipments. She also said CC had told her he would be carrying cocaine through town and wanted her protection, and she admitted to following CC in her police car two times for $500 each.

At trial Kalb testified that she thought CC was asking her to help him transport motorcycle parts through town and to keep him from getting arrested for driving on a suspended license. She said she told him she would "lock him up" if he had drugs in his truck and thought he was joking when he said he was carrying cocaine. She also claimed she could not hear him talking about the drugs during their drive because her windows were rolled down, her phone's speakers were not working properly, the cell phone coverage was spotty, and her hearing is bad. She also testified that she searched CC's truck at the end of the escort and that CC threw the money into her vehicle as she drove away in response to a call.

A jury convicted Kalb on December 14, 2012 of two counts of attempted extortion under color of official right, in violation of 18 U.S.C. § 1951(a), and two counts of attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846. She was acquitted of the money laundering charges. The district court sentenced her to 30 months in prison and 3 years supervised release. Kalb appeals her convictions, arguing there was insufficient evidence to show either that she induced CC to part with his money or that she was in constructive possession of the nonexistent cocaine which CC had purportedly carried in his vehicle.

We review de novo the sufficiency of evidence to support a conviction and "will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." <u>United States v. Brown</u>, 560 F.3d 754, 769 (8th Cir. 2009) (internal quotation marks omitted). We view the evidence in the light most favorable to the verdict. <u>Id.</u> at 770.

A public official commits extortion in violation of 18 U.S.C. § 1951 when she "receives payment to which [she] was not entitled, knowing that the payment was made in return for official acts." Evans v. United States, 504 U.S. 255, 268 (1992). It is not necessary that the public official induce or even initiate the payment. Id. at 265–66. Kalb asserts that the government failed to prove "explicit quid pro quo," citing the Supreme Court's holding in McCormick v. United States, 500 U.S. 257, 271 (1991). However, the Court in that case explicitly limited its holding to elected officials who accept illegitimate campaign contributions. Id. Testimony and wire recordings presented at trial demonstrated that Kalb accepted $500 on two occasions as payment for following CC in her police car as he transported cargo across town. Because Kalb was not entitled to the $1000 CC paid her and because driving her marked police car while in uniform was an official act, we conclude there was sufficient evidence for a jury to convict her of attempted extortion. See Evans, 504 U.S. at 268.

Kalb next argues that there was insufficient evidence to support her attempted possession with intent to distribute convictions because the government failed to prove she had constructive possession over the drugs represented to be in CC's truck. The government may show that Kalb knowingly possessed contraband by showing constructive possession, which is "ownership, dominion, or control over the contraband itself," or over the vehicle in which the contraband is concealed. United States v. Poulack, 236 F.3d 932, 936 (8th Cir. 2001) (internal quotation marks and original emphasis omitted).

Kalb asserts that because we have concluded that "mere presence in a vehicle containing contraband is not enough" to find a person has constructive possession of it, United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004), the fact that she was not in CC's truck means she could not have had constructive possession over what was inside it. In Serrano-Lopez, passengers were determined to have had

constructive possession over illegal drugs in a car because they knew the drugs were there and yet rode with them nonstop from California to Nebraska. Id. Kalb also asserts that the ten to twenty minutes during which she followed CC's truck was not enough time to establish constructive possession. Finally, she cites our decision in United States v. Wilson, 619 F.3d 787, 797 (8th Cir. 2010), stating that she did not have a key or access to CC's vehicle and therefore could not have had dominion over it.

We have determined that "[t]he linchpin of the 'ownership, dominion, or control' required for constructive possession is 'not direct, physical control, but the ability to reduce an object to actual possession.'" United States v. Chauncey, 420 F.3d 864, 873 (8th Cir. 2005). A person has this ability if she is "sufficiently associated with another having physical possession that [she] is able to produce a controlled substance for a customer." Id. Kalb knew that CC transported and sold drugs. The FBI recorded CC asking Kalb to protect two shipments of cocaine and Kalb agreeing to do so. In her statement to police, Kalb confirmed CC had made these requests. The undisputed evidence shows that Kalb then carried out the requested escorts by driving in her police cruiser closely behind CC's truck, which she believed contained drugs. At any time, Kalb could have switched on her lights, stopped CC's truck, searched it, and seized any drugs it might have been carrying. In fact Kalb's presence behind the truck ensured no other officer would interfere, just as the two had planned. Since her ability to execute a traffic stop enabled her to reduce any drugs CC may have had to her actual possession, we conclude that the evidence supports Kalb's attempted possession with intent to distribute convictions based on her constructive possession of the drugs CC told her were in his truck. See id.

At the close of her brief, Kalb asserts that a reasonable jury would have found that Kalb was entrapped by CC and the FBI. Because she does not support this claim "with specific reasons, citations to the record, or relevant legal authority," we consider it to be waived. United States v. McAdory, 501 F.3d 868, 870 n.3 (8th Cir. 2007).

We conclude that the evidence presented at trial was sufficient for a reasonable jury to find beyond a reasonable doubt that Kalb was guilty of extortion under color of official right and possession with intent to distribute cocaine. Accordingly, we affirm the judgment.

_____