# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1776

_____

|                                   |     |                             |
|-----------------------------------|-----|-----------------------------|
| United States of America,         | *   |                             |
|                                   | *   |                             |
| Appellee,                         | *   |                             |
|                                   | *   | Appeal from the United States |
| v.                                | *   | District Court for the      |
|                                   | *   | Western District of Arkansas. |
| Corey Lamont Harrison,            | *   |                             |
|                                   | *   | [UNPUBLISHED]               |
| Appellant.                        | *   |                             |

_____

Submitted: November 17, 2011
Filed: January 25, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Corey Harrison was indicted for aiding and abetting the knowing possession with intent to distribute five grams or more of a mixture or substance containing cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Harrison filed a motion to dismiss for lack of probable cause, which the district court[1] denied. Thereafter, Harrison pleaded guilty pursuant to a plea agreement. At sentencing, the district court found that Harrison qualified as a career offender and sentenced him to 188 months' imprisonment. On appeal, Harrison argues

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

that the district court committed reversible error by denying his motion to dismiss for lack of probable cause and applying the career offender provision of the Guidelines. We affirm.

## I. *Background*

Arkansas State Police (ASP) investigators received information that individuals were purchasing crack cocaine in Strong, Arkansas, and traveling back to Crossett, Arkansas, to distribute it. During the investigation, a confidential informant (CI) notified investigators that Harrison had driven to Strong in an SUV to purchase crack cocaine.

ASP Investigator Scott Russell and Detective Shelby Hughes of the Crossett Police Department (collectively, "investigators") were positioned on Highway 82 in an unmarked ASP truck, and two ASP troopers were positioned along Highway 82 at different locations in marked patrol units conducting surveillance. After a short wait, the investigators spotted Harrison driving an SUV on Highway 82 leaving Strong, Arkansas, as the CI had described. The investigators noticed another occupant in Harrison's vehicle. They verified that Harrison's driver's license was suspended and began to follow him in an unmarked police truck. While the investigators were following Harrison, they observed him make a U-turn in the highway and pull alongside a parked vehicle on the shoulder of the highway.

The investigators continued down Highway 82 past Harrison's stopped vehicle for about a mile and waited. After several minutes, Harrison continued down Highway 82, and the investigators resumed their surveillance. While following Harrison, they began filming Harrison's vehicle in the event that any objects were thrown from it. On a prior occasion, when officers attempted to stop Harrison's vehicle, a suspected amount of narcotics was thrown from the vehicle. But no narcotics were recovered on that occasion. As the investigators were following Harrison, they passed ASP Trooper Clayton Moss in a marked patrol unit, who

notified them that he clocked Harrison traveling 65 or 66 miles per hour in a 55-mile-per-hour zone. Thereafter, the investigators observed Harrison's vehicle veer completely across the fog line. At that time, the investigators notified ASP Trooper David Tumey, who was in a marked patrol unit, to stop Harrison for the observed traffic violations. Investigator Russell believed that probable cause existed to stop Harrison's vehicle based on the traffic violations and Harrison's driving on a suspended license.

As Trooper Tumey began the traffic stop, the investigators observed an object thrown from the passenger-side window of Harrison's vehicle. This act, coupled with the information that the CI provided, suggested drug activity to Investigator Russell. Trooper Tumey stopped the car. Meanwhile, the investigators retrieved the object thrown from the car—a baggy of crack cocaine. After receiving *Miranda* warnings, Harrison admitted that he drove his passenger to Strong to buy crack cocaine.

Harrison was indicted for aiding and abetting the knowing possession with intent to distribute five grams or more of a mixture or substance containing crack cocaine, in violation of §§ 841(a)(1) and (b)(1)(B)(iii). Harrison moved to dismiss for lack of probable cause. At the suppression hearing, the district court denied the motion to dismiss, finding that the officers had probable cause to stop Harrison based on speeding and driving on a suspended license. Additionally, the court found that the officers had a reasonable suspicion of drug activity once they observed the drugs being thrown from the vehicle.

Harrison then pleaded guilty pursuant to an unconditional plea agreement. In that agreement, Harrison stipulated to certain facts, including that "a passenger in the vehicle with Harrison . . . threw a bag of crack cocaine out of the window"[2] and that

---

[2]"Upon arrest, [the passenger] admitted to throwing the bag of crack cocaine out of the vehicle window."

Harrison was "driving [his passenger] to Strong, Arkansas[,] for the purpose of purchasing crack cocaine." Harrison also acknowledged that the plea agreement did not promise a specific sentence. The government, in turn, "agree[d] not to object to a finding by the [district] court that [Harrison] was a minimal participant in the criminal activity pursuant to U.S.S.G. § 3B1.2." And, it "agree[d] to withdraw the sentencing enhancement previously filed" pursuant to 21 U.S.C. § 851.

Prior to sentencing, the probation office prepared a presentence investigation report (PSR). Harrison lodged eight objections to the PSR, including an objection to the application of the career offender provision, U.S.S.G. § 4B1.1. Paragraph 18 of the PSR stated that Harrison had been convicted of two prior felony convictions involving controlled substance offenses. Because the instant offense involved a controlled substance offense and Harrison was 18 years or older at the time of its commission, the PSR concluded that Harrison qualified as a career offender under § 4B1.1. The enhancement raised Harrison's Guidelines offense level to 34. Harrison objected, arguing, *inter alia*, that application of the provision violated the Due Process Clause and the Double Jeopardy Clause of the Fifth Amendment, as well as the Eighth Amendment's prohibition against cruel and unusual punishment.

At sentencing, the district court found that Harrison had two prior convictions involving substance offenses, making him a career offender. The district court found "no constitutional violations for abuse of due process" resulting from application of § 4B1.1. After crediting Harrison for acceptance of responsibility, the district court calculated a total offense level of 31 and a criminal history category of VI, yielding a Guidelines range of 188 to 225 months' imprisonment. The district court sentenced Harrison to 188 months' imprisonment.

## II. *Discussion*

On appeal, Harrison argues that the district court should have granted his motion to dismiss for lack of probable cause. He also contends that the court erred in applying the career offender provision of the Guidelines.

### A. *Waiver of Probable Cause Issue*

As a threshold matter, we consider whether Harrison's unconditional guilty plea bars him from raising on appeal the denial of his motion to dismiss for lack of probable cause. Our review of the record reveals that Harrison's guilty plea was, in fact, unconditional. "[A]s [Harrison's] guilty plea was unconditional, he waived his right to challenge the district court's pretrial ruling on [this] Fourth Amendment issue[]." *United States v. Harner*, 628 F.3d 999, 1000 (8th Cir. 2011) (citing *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) ("A guilty plea waives all suppression issues not expressly reserved by a conditional plea.")). Although "[a] defendant may enter a conditional guilty plea 'reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion,'" he may do so "only with the consent of the district court and the government." *Id*. (quoting Fed. R. Crim. P. 11(a)(2)). Here, Harrison pleaded guilty unconditionally; therefore, his argument that the district court erroneously denied his motion to dismiss for lack of probable cause is waived by his guilty plea. *See id*.

### B. *Career Offender*

Harrison also argues that the district court's application of the career offender provision, U.S.S.G. § 4B1.1, violated the Due Process Clause and the Double Jeopardy Clause of the Fifth Amendment, as well as the Eighth Amendment's prohibition against cruel and unusual punishment.

### 1. *Due Process*

Harrison contends that application of the career offender provision forces him to answer for a crime without a presentment or indictment of a grand jury. He asserts that classifying him as a career offender after the government has withdrawn its information pursuant to 21 U.S.C. § 851 to have him declared a career offender violates his right to due process of law.

In response, the government contends that Harrison never disputed the factual underpinnings of his prior convictions and confuses the Guidelines career offender provision with enhancements to his statutory range of punishment pursuant to § 851. According to the government, although it agreed in the plea agreement to withdraw its information to establish prior convictions and not to increase his statutory range of punishment pursuant to § 851, it never stipulated to Harrison's recommended Guidelines range or to his career offender classification under the Guidelines. The government argues that Harrison cannot make a substantial showing that his due process rights were violated because he was not sentenced in excess of the maximum term authorized by law—40 years. Additionally, it maintains that Harrison cannot make such a showing when the district court's discretion to impose a sentence below the statutory maximum remains unaffected.

Harrison asserts that "his prior convictions should not be used to enhance his sentence" in spite of the Supreme Court's holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998), that a "sentence-enhancing prior conviction need not be charged in [the] indictment; due process does not require treating recidivism as [an] element of [the] offense." *United States v. Brown*, 221 F. App'x 496, 497 (8th Cir. 2007) (unpublished per curiam). Harrison's argument is "unavailing." *Id*. "The Supreme Court has never overruled its decision in *Almendarez-Torres*," nor has it "alter[ed] the rule that a court may consider prior criminal history as a sentencing factor." *United States v. Johnson*, 408 F.3d 535, 540 (8th Cir. 2005).

## 2. *Double Jeopardy*

Harrison maintains that application of the Guidelines career offender provision results in him "getting hit with a double whammy" because his "two [state] offenses [were] counted twice": first, to determine his offense level and, second, to determine his criminal history category. Harrison asserts "that this is in effect a type of double jeopardy" because he

> had previously been convicted of having committed state crimes for which he has paid his price in society and is now being charged with an additional price yet again for the very same crime for which he had already been found guilty by the state and for which the U.S. Government never prosecuted.

Additionally, he argues that "[h]e is also being hit twice by being charged with the crime being assessed against him both for offense level purposes and for determining criminal history."

In response, the government argues that although defendants categorized as career offenders under § 4B1.1 generally have their base offense level increased and their criminal history category automatically increased to VI, Harrison ignores the fact that his criminal history category would be VI even if he was not classified as a career offender. According to the government, the PSR determined that Harrison had a criminal history score of 15, which equates to a criminal history category of VI. Furthermore, the government cites this court's prior holding that an enhancement for criminal history does not violate the Double Jeopardy Clause. *See United States v. Thompson*, 972 F.2d 201, 204 n.3 (8th Cir. 1992).

We hold that Harrison's argument that "the 'career offender' portion of the guidelines is unconstitutional for double jeopardy reasons" is without merit. *Id.* (citing *United States v. Thomas*, 930 F.2d 12, 14 (8th Cir. 1991) (holding that

-7-

enhancement for criminal history does not violate the Double Jeopardy Clause)); *see also United States v. Andrews*, 447 F.3d 806, 810 (10th Cir. 2006) ("Andrews claims that the career offender enhancement imposed pursuant to U.S.S.G. § 4B1.1 violates the Double Jeopardy Clause of the Fifth Amendment. The Supreme Court has consistently rejected double jeopardy challenges to recidivism statutes, stating that 'the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.'" (quoting *Witte v. United States*, 515 U.S. 389, 400 (1995))).

### 3. *Cruel and Unusual Punishment*

Finally, Harrison argues that because "his participation in the crime was minimal," application of the career offender provision and a sentence of 188 months' imprisonment violates the Eighth Amendment's prohibition against cruel and unusual punishment.

In response, the government notes that Harrison's sentence is at the low end of the Guidelines range and falls squarely within the statutory range of punishment. Additionally, the government argues that the record reflects that Harrison was more than just an "innocent driver"; instead, he admitted to law enforcement that he transported his passenger to buy crack cocaine.

"[W]e have previously rejected [the] argument" that the career offender provision "violate[s] the Eighth Amendment's protection against cruel and unusual punishment." *United States v. Shareef*, 259 F. App'x 897, 897 (8th Cir. 2008) (unpublished per curiam) (citing *United States v. Foote*, 920 F.2d 1395, 1401 (8th Cir. 1990) (rejecting defendant's argument that his sentence was cruel and unusual due to enhancement of his sentence under the career offender provision and "agree[ing] with the Tenth Circuit that, as a matter of law, sentences under the Guidelines are sentences within statutorily prescribed ranges and therefore do not

violate the Eighth Amendment")); *see also United States v. Knight*, 96 F.3d 307, 311 (8th Cir. 1996) ("We also reject [the defendant's] assertion that his career offender sentence constitutes cruel and unusual punishment under the Eighth Amendment.") (citing *United States v. Gordon*, 953 F.2d 1106, 1107 (8th Cir. 1992) (holding that application of career offender provision resulting in sentencing range beginning at 262 months' imprisonment for aiding and abetting knowing and intentional manufacturing of phenylacetone did not violate Eighth Amendment); *Foote*, 920 F.2d at 1401).

Applying these precedents, we hold that Harrison's within-Guidelines sentence of 188 months' imprisonment does not violate the Eighth Amendment.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____