# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3028

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Leonard R. Fazio, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 10, 2007
Filed: May 29, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Leonard Fazio appeals his conviction and sentence for one count of mail fraud and two counts of wire fraud. 18 U.S.C. §§ 1341, 1343. We affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND

Fazio is a licensed real estate broker with his own RE/MAX franchise in Des Moines, Iowa. In this capacity, Fazio also attended to third-party properties for out-of-state mortgage companies, concerning himself with foreclosures, relocations and repossessions. The mortgage companies directed him to check on property

occupancy, to get possession of properties with "cash-for-keys" deals, and to provide the selling mortgage company an opinion on the estimated value of a particular property. Homecomings Financial was one of the companies that hired Fazio to perform such third-party work. Homecomings would either enlist Fazio to sell the third-party property "as is," or would direct Fazio to rehabilitate the property by hiring a contractor to do painting and repairs. If rehabilitation was necessary, Fazio would hire and pay the contractors, and submit reimbursement requests to Homecomings.

Fazio submitted several such requests for reimbursement to Homecomings, which requests provide the basis for the mail fraud charges. According to Fazio's employees (who were government witnesses), Fazio directed them to fabricate or inflate bills for reimbursement. Allison Bice, Fazio's office manager from 2001 through 2004, testified that Fazio directed her to inflate bills, and to "get as much money out of Homecomings as . . . possibl[e]." Bice testified that Fazio felt the third-party property business was not terribly profitable, and this was a way to recoup losses. Heather Dyar, who worked as a bookkeeper in the office, testified that when she noticed that Bice's invoices were inflated, she expressed concern to Fazio that a crime was being committed. Fazio brushed her off. He told her that no one could tell him what to charge for his services, and that this was not an uncommon practice in the third-party property market. Diana Pastor, one of Fazio's real estate agents, testified that Fazio had told Bice to bill Homecomings the "maximum" amount–meaning the highest amount that Homecomings would pay for a particular service, based on a list supplied to the local agents. Fazio does not contest that Homecomings was billed excess amounts, and in some cases for work not performed by contractors. However, Fazio contends that he did not know that Bice was submitting inflated bills and that he did not direct her to do so.

The wire fraud charges stem from Fazio's handling of the listing for a Homecomings' acreage in New Virginia, Iowa. Homecomings retained Fazio to do a broker price opinion on the property, and he opined that the property was worth

$40,000 "as is" or $80,000 if rehabilitated. Homecomings opted to sell it without rehabilitation, and directed Fazio to list it for $59,900. Fazio attempted several times to buy it for himself, but each offer was summarily rejected by Homecomings. Fazio directed Dyar, who was assisting him with the electronic offer submissions, to call Homecomings and ask why the offers were being rejected. A Homecomings representative told Dyar that it was company policy not to sell to listing agents. Dyar testified that upon hearing this news, Fazio directed her to submit offers to Homecomings in Candy Olson's name. Olson was Fazio's girlfriend at the time. Homecomings accepted "Olson's" offer to buy the property for $48,000. Shortly after Homecomings accepted this offer, but before closing, Fazio marketed the property and secured an offer from John Jordan to buy the property for $110,000. The sale required some repair work to be performed, including trash removal, roof repairs, new carpeting, painting and drywall work.

Olson testified that she did not know that Fazio had submitted an offer in her name. She testified that he told her that she signed papers with regard to the offer when she was in the hospital recovering from brain surgery, but she did not remember doing so. Other witnesses testified that Olson knew all along that Fazio was buying the property in her name, and that she hoped to profit from it. And in fact, she did profit. Fazio secured a loan through his realty company's line of credit for approximately $45,000 for Olson's November purchase of the New Virginia real estate. Fazio intended to pay off the loan and realize a substantial profit from the Jordan transaction. Olson testified that he offered to pay her $2,000 for letting him use her as a conduit.

Unfortunately for Fazio, his relationship with Olson soured in the midst of these various transactions. Olson attended the closing on the New Virginia property alone and has never turned over the proceeds of the transaction to Fazio. Her personal attorney testified that she kept $31,000 of the proceeds for herself and gave him the remainder to keep in his trust account. The attorney testified that he made a few

disbursements from the account for bills which needed to be paid (including Olson's tax obligations as a result of the transaction, and $2,000 in reimbursements to Jordan for deficiencies in the property). The attorney testified that he wrote a check to the United States Marshal's office for the remaining balance in the account.

A jury convicted Fazio of two counts of wire fraud in connection with the sale of the New Virginia land, and one count of mail fraud for an inflated reimbursement request. Specifically, the jury found that Fazio submitted by mail a fraudulent request for reimbursement for $1,650 for work done by a contractor to remove trash from a property in Des Moines. The two counts of wire fraud related to the offer Fazio faxed, purportedly on Olson's behalf, and the money wired to Homecomings at closing, also allegedly on Olson's behalf.

After disposal of post-trial motions, including a motion for new trial, the district court sentenced Fazio to twenty-four months' imprisonment, imposed a $40,000 fine, and ordered $58,150[1] in restitution to Homecomings. Fazio appealed. Shortly thereafter, Fazio's counsel discovered that the trial judge's wife was the first cousin of Olson's buyer Jordan, who had also been a government trial witness. Counsel also discovered that the trial judge had commented to Jordan, after trial but prior to sentencing, that Fazio would likely receive jail time for breaking the law.

Using this "newly discovered evidence," Fazio asked the district court, a second time, for a new trial. The trial judge immediately recused himself and the matter was referred to this court.[2]

---

[1]The district court credited Fazio for the amount that Olson's attorney paid to the United States Marshal's office, $45,035, and ordered Fazio to pay the balance, $13,115. The government indicated at sentencing that the $45,035 would be remitted to Homecomings.

[2]Fazio requested that this court remand for a hearing on the recusal issue in the district court, which request we denied.

On appeal, Fazio contends that he is entitled to a new trial because of the trial court-witness relationship or, at least, because the trial judge should have recused himself prior to pronouncing the sentence. Fazio additionally argues that the district court should have ordered a pre-trial evidentiary hearing on his assertion that a conflict of interest existed because his initially retained attorney was married to an assistant United States Attorney (AUSA). With regard to the trial, Fazio argues there was insufficient evidence to support the guilty verdicts, that there were evidentiary errors at trial, and that there were several errors with regard to his sentence.

## II.    DISCUSSION

### A.    Recusal

Fazio argues that the trial judge's failure to inform the parties that his wife's first cousin was a government witness seriously affected the fairness and integrity of his trial. He also asserts that at a minimum, the trial judge should have recused himself prior to sentencing because of the comment he made that Fazio would receive jail time for breaking the law.

It is unclear what our standard of review should be for this issue, which has two separate components: (1) the district court's implicit decision during trial not to disclose his relationship to Jordan or recuse, and (2) the district court's failure to recuse for the sentencing proceeding after making the "jail" comments to Jordan. Fazio seems to admit that we review the second component for plain error. We hold, however, that the first component–the district court's implicit decision not to disclose and recuse–should be reviewed for an abuse of discretion, which would be our standard had this decision been made on the record. See Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc) (abuse of discretion standard for district court's decision not to recuse).

We find that the district court did not abuse its discretion in failing to recuse during Fazio's trial. Fazio concedes that the trial judge was not required by 28 U.S.C. § 455(b) to disclose that his wife was a cousin to one of the witnesses. Section 455 requires a judge to recuse himself when a material witness is related within the third degree to the judge or his spouse. Id. § 455(b)(5). A first cousin is considered the fourth degree of relationship. However, Fazio argues that section 455(a) does require recusal in these circumstances. Section 455(a) provides that any judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Id. § 455(a). Fazio cites our decision in Moran in support of his arguments.

In Moran, one of the defendants admitted at her deposition that she and the district court judge knew each other socially for over twenty-one years, and during those years they had visited one another's homes on various occasions. Upon learning of this relationship, the plaintiff asked the district court to recuse, which request the district court denied without comment. On appeal, we noted that section 455(a) does not require scienter, or an actual bias, but instead it contains a purely objective standard. Moran, 296 F.3d at 648. We reiterated that the key ingredient in a section 455(a) recusal case is avoidance of the appearance of impropriety, as judged by whether the average person on the street might question the judge's impartiality. Id. In light of the longtime and relatively close social relationship between a party to the proceeding and the trial judge, we remanded to the district court for a more thorough (than an order without comment) consideration of the recusal issue. Id. at 649.

Moran is not dispositive for a number of distinguishing reasons. First and foremost, the questioned relationship was between the trial judge and a *party*, not simply a witness. And despite Fazio's attempts to paint Jordan as a material witness for the government, an examination of the record belies this assertion. Jordan's testimony was actually more favorable to Fazio than the government. He testified that he bought the New Virginia property for its listed price of $110,000, that he was quite

-6-

happy with the property, and that it was his understanding that the property was an investment for both Olson and Fazio. The key issue in the fraud counts relating to the New Virginia property was whether Olson was a willing participant in the transaction. Jordan's testimony helped Fazio in that regard. Jordan also testified that he was a longtime friend of Fazio's. His testimony, including cross-examination and redirect examination consisted of twenty-six pages within a voluminous transcript. Jordan's relationship to the Fazio trial is much less significant than the Moran party was to that proceeding.

Moran is also distinguishable because the record suggested a "fractious relationship between the district court and Moran's attorneys." Id. at 649. A careful review of the record suggests no such conflict in Fazio's trial proceedings. We admit that the trial court's handling of this matter was wanting. Ideally, once the trial judge realized that one of the witnesses was his wife's cousin, he should have disclosed the possible conflict to the parties. See id. ("We find particularly worrisome the district court's failure to disclose this conflict himself, as permitted by section 455(e)."). In the district court's defense, it is quite possible that he was unaware of the issue until after trial started. Nonetheless, disclosure would have been preferable, regardless of whether doing so during trial would have been cumbersome. However, we cannot say that the trial judge's failure to do so was an abuse of discretion.

Fazio also complains that the pre-sentence comments the trial judge made to Jordan require that he be disqualified from the sentencing of Fazio. As noted above, we review this issue for plain error. Before an appellate court can correct an error not raised at trial, it must find that there was plain error that affected substantial rights. Even then, an appellate court may exercise its discretion to notice the error only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. United States v. Pirani, 406 F.3d 543, 550 (8th Cir.), cert. denied, 126 S. Ct. 266 (2005). The judge, in response to Jordan's inquiry, told Jordan that Fazio would get jail time because he broke the law. We find no error in the district court's

failure to recuse for sentencing. Instead, we find that this comment, from an experienced federal trial judge, merely reflected the reality of the situation in light of the federal Sentencing Guidelines. See, e.g., United States v. Ture, 450 F.3d 352, 357 (8th Cir. 2006) (reversing district court's decision to give only probation when the Guidelines called for at least twelve months of incarceration); United States v. Givens, 443 F.3d 642, 645-46 (8th Cir. 2006) (rejecting the district court's sentence of "time served" when defendant had served no time and a Guidelines range of twenty-four to thirty months applied).

In addition to the two-part recusal issue, there is one more matter we must consider before moving on to Fazio's remaining arguments. The recusal issue was first raised in Fazio's second motion for new trial, based on newly discovered evidence, filed with the district court after the notice of appeal had been filed. Of course, once the notice of appeal was filed, the district court was without jurisdiction to take any further action in the case. As a result, the motion for new trial is still pending. In light of our decision that the district court did not err by not recusing during trial or at sentencing, we find that the motion for new trial should be denied.[3] In view of the fact that we are also remanding to the district court for reasons discussed infra, we direct the district court to deny the still-pending motion for new trial.

B.    Conflict of Interest

A few months after Fazio was indicted, he raised an allegation regarding a potential conflict of interest through a motion to dismiss. Fazio argued his Sixth Amendment right to effective assistance of counsel was adversely implicated because

_____

[3]We also doubt that the current offering is really "newly discovered evidence." We question whether the relationship was not something that could have been discovered prior to trial, especially considering Jordan's friendly relationship with Fazio.

his initially retained defense counsel was married to an AUSA who was allegedly involved in the early investigation of the criminal charges against him. The district court held a hearing on the motion to dismiss and denied it without an evidentiary hearing, finding that the allegations of conflict of interest were too speculative and that Fazio could point to nothing in the record indicating that Fazio's case was adversely affected by the relationship. The court also found that no substantive information about the case was exchanged by the AUSA and her husband defense attorney.

We review the district court's refusal to hold an evidentiary hearing on a potential conflict of interest for an abuse of discretion, Covey v. United States, 377 F.3d 903, 909 (8th Cir. 2004), and find none. We agree with both the government and the district court that the conflict claims were too speculative to warrant an evidentiary hearing. Fazio's current counsel was retained within weeks after his indictment. And though the AUSA in question was the attorney who took the initial call indicating that a local real estate agent might be engaged in unlawful practices, the AUSA instructed the caller to contact the FBI. When the matter was referred from the FBI back to the United States Attorney's office, the AUSA immediately recused herself from the matter. There was no evidence that any substantive information about the case passed between Fazio's initial defense counsel and his AUSA spouse. Accordingly, we find no abuse of discretion and reject Fazio's arguments on this point.

## C.    Trial Errors

Fazio argues that there was insufficient evidence to support the verdict and that the verdict was contrary to the weight of the evidence. For a sufficiency challenge, we view the evidence, and all of its inferences, in the light most favorable to the verdict. United States v. Lee, 451 F.3d 914, 916 (8th Cir. 2006). We reverse only if no reasonable jury could find Fazio guilty of the charges. United States v. Walker, 393 F.3d 842, 846 (8th Cir.), cert. denied, 126 S. Ct. 463 (2005). While Federal Rule of Criminal Procedure 33(a) authorizes a district court to "vacate any judgment and grant a new trial if the interest of justice so requires," a motion for new trial based on the weight of the evidence is generally disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. United States v. Johnson, 474 F.3d 1044, 1050-51 (8th Cir. 2007).

Viewing the evidence in the light most favorable to the guilty verdict, we find that a reasonable jury could have convicted Fazio of the charged offenses. With regard to the mail fraud,[4] Bice testified that Fazio directed her to inflate billings. Dyar testified that she questioned Fazio about the problem, but that he brushed her off by essentially saying that everybody does it. Pastor also testified that Fazio had directed Bice to get the most money out of Homecomings as possible. Fazio's counsel attacked Bice's credibility during the defense case, but the jury obviously believed Bice, at least in part. It was entitled to do so, and was certainly not unreasonable in doing so.

Similarly, with regard to the wire fraud and the New Virginia property, Candy Olson testified that she did not know that Fazio was buying the property in her name, that she did not sign the faxed offer, and that she did not understand what was going

---

[4]We have also considered, and reject, Fazio's assertion that there was no evidence that the mail was used to transmit the documents at issue in Count 2. We agree with the government that there was sufficient evidence of use of the mail.

on with this property until she closed on the property. Pastor testified that she thought the property was worth much more than Fazio's submitted price opinion, and that Fazio told her he was going to price the property low and "steal" it from Homecomings. In his defense, Fazio assiduously presented evidence that impugned Olson's and Pastor's credibility and contradicted their assertions. We concede that there were numerous inconsistencies between Olson's testimony and other evidence in the case. However, to convict Fazio of these charges, the jury had to find that Olson was an unwilling participant in the transaction. The jury was entitled to believe the testimony of Olson in this regard, and it apparently did so. We cannot say that this was unreasonable.

For mostly the same reasons, we do not fault the district court for refusing to exercise its limited discretion to grant Rule 33 relief. There was evidence to support the verdict. It may or may not have been the same verdict we would have rendered had we sat on the jury. However, what the district court, or appellate court, thinks of a defendant's guilt or innocence is of little import if there is sufficient evidence to support the jury's guilty verdict. The jury watched and heard each witness testify, viewed the documentary evidence, and came to a conclusion about who and what to believe. Fazio contends that because the jury acquitted him on some of the counts, it must have had reasonable doubt on the remaining counts. We disagree, and believe instead that the jury carefully performed its duty by not simply rendering a blanket verdict on all counts. We, too, have carefully examined the record and find no error that should have been rectified by the operation of Rule 33.

We next turn to Fazio's allegations of error with regard to various evidentiary rulings. We review the trial court's evidentiary rulings for an abuse of discretion. United States v. Edelmann, 458 F.3d 791, 809 (8th Cir. 2006) (bad act evidence); United States v. Chauncey, 420 F.3d 864, 875 (8th Cir. 2005) (defendant's proffered relevant evidence), cert. denied, 126 S. Ct. 1480 (2006). Fazio argues that there was prejudicial error when the jury heard evidence of other bad acts, specifically, that he

had submitted inflated claims for repayment outside of the times alleged in the indictment and that he committed an ethical violation. Prior to trial, the district court sustained Fazio's counsel's motion in limine to exclude other "bad act" evidence. However, on direct examination, Bice testified about occasions wherein Fazio had directed her to submit inflated bills, and some of those instances were outside of the charged time frame. The district court gave a cautionary instruction immediately after Bice was finished testifying. The second incident occurred during Pastor's testimony, wherein she testified that she thought it was an ethical violation for Fazio to advertise the New Virginia property as his own listing before Olson had closed on the purchase of the property. Following an objection and discussion outside of the jury's presence, the district court instructed the jury to disregard Pastor's answer regarding the ethical violation.

The government argues that it did not purposefully elicit testimony in violation of the motion in limine, that the evidence was relevant to give the jury a full picture of the criminal conduct, and that any error was adequately cured by the district court's prompt instructions. We agree with the government's characterization of this evidence and find that the district court's remedy cured any possible prejudice. Bice testified that she worked for Fazio from February 2001 through March 2004, and that during that time period, she routinely submitted inflated bills to Homecomings. Pastor volunteered extra information when asked about whether she ran an ad for the New Virginia property. The district court took prompt remedial action with regard to both comments, and further gave the jury an "other bad acts" instruction in the final jury instructions. No abuse of discretion occurred with regard to this evidence.

Fazio's final argument with regard to trial error is that he was denied his Sixth Amendment right to testify and present a defense when the district court precluded him from testifying about the sexual orientation of a previous witness, who was also one of his former employees. Fazio testified on direct examination about how he came to hire this agent:

And without sounding too egotistical, she was a terrible Realtor at Iowa Realty. A lot of it was her lifestyle. A lot of it she just didn't come across good to people. She's very smart, very educated, and the most she ever made in real estate was $16,000, and I just knew she had more potential than that.

On cross-examination, the government followed up, asking Fazio if this agent was unsuccessful before coming to work for him, and Fazio reiterated that she "wasn't doing very well" at her former job, but that she has become a productive agent with his training. On redirect, Fazio's counsel again began questioning him about this agent's "lifestyle issues." At this point the government objected, and after some colloquy with the trial judge, the court excluded it as irrelevant. Counsel for Fazio argued that the government opened the door to this line of reasoning, and that Fazio was trying to enhance his own credibility by pointing out that he hired her in spite of her problems.

Subject to reasonable restrictions, the Sixth Amendment does grant the accused the right to present relevant evidence in his favor. Chauncey, 420 F.3d at 875. The district court found, however, that the proffered evidence was not relevant. We agree. We also find that Fazio did manage to testify that the agent had "lifestyle" issues, a common euphemism for referring to someone with a homosexual orientation. And, Fazio's stated reason for wanting to introduce the evidence–to bolster his own credibility by showing the jury that he hired the agent because he thought she had good sales potential despite her previous low sales performance–was satisfied by his other testimony. Fazio clearly testified that the agent had been a low performer at Iowa Realty when he hired her. We, like the district court, fail to see the relevance of Fazio's opinion that the reason she had not previously been a successful agent was somehow related to her sexual orientation. This contention is without merit.

-13-

**D.  Sentencing**

Fazio makes several arguments relating to his sentence.  He first contends that the district court wrongly found facts to support the amount of loss and the abuse of trust enhancement in violation of the Sixth Amendment, the Due Process Clause, and United States v. Booker, 543 U.S. 220 (2005).  We have repeatedly rejected similar arguments since the Supreme Court decided Booker, and will do so in this instance as well.  E.g., United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007) (per curiam) (noting that under Booker and this court's post-Booker precedent judicial fact-finding is permissible at sentencing so long as the district court understands that the Sentencing Guidelines are advisory).  Because the district court treated the Guidelines as advisory, Fazio's argument fails.

Fazio next alleges that the district court's determination of total loss in the case, which impacted his Guidelines range, was incorrect.  We review the district court's interpretation of loss as used in the Guidelines de novo, and its calculation of loss for clear error.  United States v. Craiglow, 432 F.3d 816, 820 (8th Cir. 2005).  Under the clearly erroneous standard, we will affirm the trial court's decision unless it is not supported by substantial evidence, was based on an erroneous view of the law, or we are left with a firm conviction that a mistake has been made after reviewing the entire record.  United States v. Wallraff, 705 F.2d 980, 987 (8th Cir. 1983).

The district court calculated the amount of loss as follows: Fazio/Olson purchased the New Virginia property for $48,000, and then prior to closing on this sale with Homecomings, obtained a subsequent offer to purchase for $110,000–a difference of $62,000.  The court deducted a total of $3,500 for roofing repairs and the new carpet installed at the New Virginia property.  The court further deducted $2,000 for a payment made to Jordan for additional repairs after he bought the property.  Accordingly, the loss calculation for the wire fraud was set at $56,500.  The district court then added in $1,650 for the mail fraud reimbursement count.  The final

-14-

loss to Homecomings was calculated at $58,150. Because the loss was between $30,000 and $70,000, Fazio's offense level was increased by six levels. United States Sentencing Guidelines Manual § 2B1.1(b).

Fazio argues that he spent close to $25,000 on improvements that should be deducted from the loss calculation. The district court rejected Fazio's assertion that he spent this much on repairs to the property, finding that the only repairs to the property supported by the record were for roof repair and new carpeting, which he calculated to be $3,500.

We agree with Fazio that the record supports more than $3,500 in repairs. The roof repairer testified at trial that he billed Fazio approximately $4,600 and was paid this amount. Olson testified that trash removal, painting, and drywall work were performed on the property before it was sold to Jordan. Jordan also indicated that when he first looked at the property, there was much trash (old cars and appliances) that needed to be removed. So, it seems clear that the district court's credit to Fazio of $3,500 is not supported by substantial evidence in the record. The roof repair alone was more than that, and it is undisputed that this amount was paid by Fazio. However, assuming arguendo that all of Fazio's assertions about the cost of repairs to the New Virginia house are true–$25,000 as advocated in his brief–this does not change the Guidelines calculation of between $30,000-$70,000 in loss. Subtracting $25,000 from $58,150 still leaves a loss calculation of $33,150.

Thus, in order for us to reverse on this issue, we must agree with Fazio's other arguments about the district court's loss calculation. In this regard, Fazio argues that he personally received no benefit from the New Virginia sale. We agree that the record is clear that Fazio in no way profited from the New Virginia transaction. He is still paying on the original $45,000 note from Polk County Bank. But that does not mean Homecomings did not suffer a loss. Generally, loss under the Guidelines is the greater of actual or intended loss, and the court need only make a reasonable

-15-

estimation. United States v. Scott, 448 F.3d 1040, 1044 (8th Cir. 2006). Fazio was convicted by the jury for misrepresenting to Homecomings that Olson bought the property, when it was actually him, and for failing to disclose that he had another offer for substantially more money before the Homecomings-Olson transaction closed. If relations between Olson and Fazio had not soured, he very likely would have made a significant profit on the transaction. The fact that due to his personal circumstances he did not profit from the transaction does not preclude Homecomings from suffering either an actual or intended loss.

Fazio also argues that the loss calculation fails to take into account the amount of money that the quick sale to Olson saved Homecomings, if for example, it had been required to market the property for an extended period of time. Fazio's arguments fail because we cannot fault the district court for failing to speculate about the amount of money that Homecomings may have saved because of the quick sale to Olson.

We grant particular deference to the district court's loss calculations because of its "unique ability to assess the evidence and estimate the loss." Id.; U.S.S.G. § 2B1.1, cmt. n. 3(C). We find that the district court has made a reasonable estimation of loss in this case, despite our conclusion that Fazio should have been credited with more that $3,500 in repairs to the property. All of the district court's remaining conclusions are supported by substantial evidence in the record, and the resulting estimation of loss between $30,000 and $70,000 is reasonable. Accordingly, we deny Fazio's arguments on this point.

Fazio next challenges the district court's application of a sentencing enhancement for an abuse of a position of trust. We review the district court's conclusion that Fazio occupied a position of trust for clear error. United States v. Erhart, 415 F.3d 965, 972 (8th Cir. 2005), cert. denied, 126 S. Ct. 1181 (2006). A position of public or private trust is characterized by professional or managerial

discretion, and the abuse of trust enhancement applies where the offender has abused discretionary authority entrusted to the defendant by the victim.  Id.

The district court applied the enhancement because of Fazio's position as a real estate agent retained by Homecomings, an out-of-state company relying on him to be honest and forthright with them.  In Erhart, we affirmed the application of an enhancement as applied to a chiropractor who submitted inflated claims to insurance companies. Id. at 972.  We rejected the Erhart defendant's argument that the insurance companies permitted him little professional discretion because they closely scrutinized his billings, noting that the fraud "continued as it did precisely *because* the insurance companies trusted Erhart and the accuracy of the claims that he supplied them."  Id.

Similarly, Fazio argues that Homecomings set many of the parameters of their business relationship, and that he therefore did not occupy a position of trust.  We disagree and find that the district court did not clearly err in applying the abuse-of-trust enhancement.  Like the chiropractor in Erhart, Fazio was responsible for representing past events truthfully to a remote reimbursing company.  And, with regard to the New Virginia property, Homecomings clearly indicated that it would not sell to its listing agents.  Fazio easily sidestepped that requirement by filling in another person's name on the offer, when he was obviously the person buying the New Virginia property.  Accordingly, we agree with the district court that Fazio occupied and abused a position of trust.

Fazio next argues that his sentence was unreasonable.  A sentencing court acts unreasonably if it fails to consider a matter of relative importance, gives undue weight to an improper or irrelevant matter, or arrives at a sentence outside of the range justified by the facts of the case.  United States v. Medearis, 451 F.3d 918, 920 (8th Cir. 2006).  Fazio argues that the district court gave significant weight to the following improper or irrelevant factors: acquitted conduct, his failure to admit wrongdoing, and submitting inconsistent financial statements to the probation office.

We note that the district court followed the sentencing procedure set forth in United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005), in fashioning Fazio's sentence. Based on many factors, including the loss calculation and the abuse-of-trust enhancement, the district court determined that the Guidelines range was eighteen to twenty-four months. The district court considered the factors set forth in 18 U.S.C. § 3553(a), and sentenced Fazio to twenty-four months–the high end of the Guidelines range.

Our reasonableness review is akin to the abuse of discretion standard. Medearis, 451 F.3d at 920. The sentencing transcript reflects that the district court did consider all of the things that Fazio complains about. However, it was within its discretion to do so. Accordingly, we find that the court did not act unreasonably in refusing to sentence Fazio below the Guidelines range. We find no abuse of discretion in the district court's ultimate sentence of twenty-four months' imprisonment.

Finally, Fazio contends that the district court erred in ordering him to pay $13,115 in restitution to Homecomings. In determining whether to order restitution, the district court shall consider the amount of loss sustained by the victim, the financial resources and earning ability of the defendant, and any other factors deemed appropriate by the district court. United States v. Berndt, 86 F.3d 803, 808-09 (8th Cir. 1996).

The district court set the restitution amount the same as the loss amount–$58,150, but reduced that award by the amount that Olson's attorney paid to the United States Marshal's office, $45,035, and ordered Fazio to pay the balance, $13,115. We have previously found that in setting the loss amount at $58,150, the district court erred in not giving Fazio appropriate credit for repairs made to the New Virginia property. Although denial of credit was not enough to make a difference for purposes of the loss calculation under U.S.S.G. § 2B1.1, it does make a difference in the restitution. While the record is not entirely clear as to the amount Fazio should

be credited for repairs, it is clearly more than the $3,500 applied by the district court. The amount may not equal exactly $13,115, but our review of the record indicates that Homecomings will be adequately made whole when the government remits to it the $45,035 held by the Marshal's office. Accordingly, we vacate the district court's award of restitution.

## III. CONCLUSION

We affirm Fazio's conviction and sentence, and remand to the district court to deny the motion for new trial and vacate the award of restitution.

_____