# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40218**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Christian A. RODRIGUEZ**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 March 2023

————————————

*Military Judge:* Tiwana L. Wright.

*Sentence:* Sentence adjudged on 12 July 2021 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Sentence entered by military judge on 10 September 2021: Dishonorable discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Ryan S. Crnkovich, USAF; Major Alexandra K. Fleszar, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Brian E. Flanagan, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and CADOTTE, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A military judge sitting as a general court-martial found Appellant guilty, in accordance with his pleas pursuant to a plea agreement, of one specification of sexual assault and one specification of indecent recording in violation of Articles 120 and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920c. The military judge sentenced Appellant to a dishonorable discharge, confinement for a total of 24 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises a single issue on appeal: whether Judge Wright, the military judge, was disqualified from Appellant's court-martial because her impartiality might reasonably be questioned. We find Appellant is not entitled to relief, and we affirm the findings and sentence.

## I. BACKGROUND

On 23 November 2019, EB[1] and several of her friends, including Appellant, went to dinner at a restaurant to celebrate EB's birthday. After dinner, EB, Appellant, Senior Airman (SrA) ZY, and Navy Seaman (SN) DR went to SrA ZY's off-base apartment to spend the night. After the group arrived at the apartment, they continued celebrating and drank alcohol. Eventually, EB became tired and went to sleep alone in one of the bedrooms. SrA ZY went to sleep in his own bedroom, and Appellant and SN DR planned to sleep in the living room.

In the early morning hours of 24 November 2019, Appellant entered the bedroom where EB was sleeping in her underwear and t-shirt. Appellant lay on the bed behind her and began rubbing EB's buttocks with his hand. This caused EB to awaken, although Appellant believed she was still asleep. While Appellant was on the bed with EB, he used his cellular phone to take photos of EB's buttocks without her consent. Appellant moved EB's underwear to the side and penetrated her vulva with his finger without EB's consent. EB began to cry, which Appellant heard and caused him to realize she was awake, but he continued to penetrate her vulva. EB began telling Appellant "no," "stop," and "I don't want that." Appellant did not immediately stop despite EB's verbal protests, but he eventually removed his finger.

After Appellant removed his finger, EB sat up, still crying. Appellant began to apologize. EB told Appellant to leave the room. Appellant did so. Appellant then woke SN DR and told him EB needed him. SN DR went to talk to EB as Appellant repeatedly attempted to return to the room and apologize, but was

---

[1] In November 2019, EB was an active duty Air Force member.

told to leave. EB told SN DR she believed Appellant had taken photos of her and asked SN DR to remove them from Appellant's phone. Appellant allowed SN DR to access his phone and delete several photos of EB's buttocks.

EB reported the sexual assault the following day, 25 November 2019. Appellant subsequently admitted to investigators that he had "groped" EB, penetrated her vulva with his finger, and taken photos of her without her consent.

Near the outset of Appellant's court-martial, Judge Wright stated she was "not aware of any matter that might be a ground for challenge against [her]." She asked if the counsel desired to question or challenge her. Counsel for both parties stated they did not.

In accordance with a plea agreement with the convening authority, Appellant pleaded guilty to one specification of sexual assault by penetrating EB's vulva with his finger without her consent in violation of Article 120, UCMJ, and one specification of unlawfully recording the private area of EB without her consent in violation of Article 120c, UCMJ. After an appropriate inquiry, Judge Wright accepted Appellant's guilty pleas. The plea agreement provided the military judge could sentence Appellant to a maximum of 24 months for each specification, with the terms to run concurrently. The plea agreement did not provide for a minimum term of confinement. Trial counsel recommended Judge Wright impose the mandatory dishonorable discharge as well as 24 months of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. Trial defense counsel asked Judge Wright to "adjudge an appropriate sentence and that's not two years of confinement." Judge Wright sentenced Appellant to concurrent 24-month and 6-month terms of confinement for the Article 120 and 120c, UCMJ, offenses, respectively, in addition to the other elements of the sentence stated above.

Following the court-martial, Appellant requested speedy post-trial review but otherwise did not request any relief from the convening authority. Appellant did not raise any concern regarding the military judge's impartiality before Judge Wright entered the judgment of the court-martial.

On appeal before this court, Appellant moved to attach certain documents. The first was a declaration from an Appellate Defense Division paralegal dated 10 June 2022, describing how he had obtained Judge Wright's official Air Force biography through The Judge Advocate General Corps webpage. The biography, attached to the declaration, reflected that Judge Wright was a member of the Air Force Reserve who in her civilian capacity served as an Assistant United States Attorney within the Criminal Division of a United States Attorney's Office. Appellant also moved to attach a declaration from Mr. PC, a civilian defense attorney. Mr. PC stated he had appeared before Judge Wright in a different court-martial that preceded Appellant's. Mr. PC further stated that

"[b]ased on publicly available information about her employment, [Mr. PC] conducted a robust voir dire" of Judge Wright in that other case and "moved for her to recuse herself."[2] According to Mr. PC, Judge Wright denied the motion. In addition, Appellant's brief cited several United States District Court opinions which identified Judge Wright—serving in her civilian capacity—as counsel for the United States in criminal cases, including multiple cases in which the defendant sought a reduction in the adjudged sentence or early release from confinement.[3]

The Government opposed Appellant's motion to attach, contending, *inter alia*, that our consideration of such material outside the "entire record" of Appellant's court-martial was prohibited by *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020). We granted Appellant's motion by order, but specifically deferred consideration of whether *Jessie* permits us to consider the attached matters during our review pursuant to Article 66(d), UCMJ, 10 U.S.C. § 866(d).

## II. DISCUSSION

Appellant asserts Judge Wright was disqualified from presiding at his court-martial because her civilian employment as an Assistant United States Attorney might cause her impartiality to reasonably be questioned. Appellant requests this court set aside his sentence and direct a rehearing on the sentence before a different military judge. Because the factual foundation for Appellant's argument relies on material outside the record of his court-martial, we must first determine whether we may consider such material in light of *Jessie*, 79 M.J. at 440–45.

### A. Application of *United States v. Jessie*

#### 1. Law

"The scope, applicability, and meaning of Article 66[ ], UCMJ, [10 U.S.C. § 866,] is a matter of statutory interpretation that we review de novo." *United States v. Willman*, 81 M.J. 355, 357 (C.A.A.F. 2021) (citation omitted).

---

[2] Mr. PC's declaration does not state the exact basis for the recusal motion but strongly implies it was due to Judge Wright's employment by the Department of Justice as an Assistant United States Attorney.

[3] *See United States v. Claudio*, No. 17-546, 2022 U.S. Dist. LEXIS 91716 (E.D. Pa. 23 May 2022) (mem.); *United States v. Jackson*, No. 21-238, 2022 U.S. Dist. LEXIS 51720 (E.D. Pa. 22 Mar. 2022) (mem.); *United States v. Ishmael*, No. 12-155, 2021 U.S. Dist. LEXIS 28180 (E.D. Pa. 16 Feb. 2021); *United States v. Fountain*, No. 12-155, 2021 U.S. Dist. LEXIS 14023 (E.D. Pa. 26 Jan. 2021) (mem.); *United States v. Coleman*, No. 12-295-1, 2020 U.S. Dist. LEXIS 189069 (E.D. Pa. 9 Oct. 2020) (mem.); *United States v. Adeyemi*, 470 F. Supp. 3d 489 (E.D. Pa. 2020).

In *Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) held that, in general, the Courts of Criminal Appeals (CCA) "may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ[, 10 U.S.C. § 866(c)]."[4] 79 M.J. at 441 (citation omitted). The CAAF defined the "entire record" to include the "record of trial," "matters attached to the record" pursuant to the Rules for Courts-Martial (formerly known as "allied papers"), and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Id.* at 440–41 (citations omitted). However, the CAAF identified two exceptions to this general rule. First, the CAAF acknowledged certain precedents had "allowed the CCAs to supplement the record . . . when necessary for resolving claims of ineffective assistance of trial defense counsel and a wide variety of other issues when those claims and issues are raised by the record but are not fully resolvable by the materials in the record." *Id.* at 442 (citations omitted). Second, other CAAF precedents have "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, [10 U.S.C. § 855, or the Eighth Amendment,[5]] even though there was nothing in the record regarding those claims." *Id.* at 444 (citations omitted).

A CCA may "generally take judicial notice of an undisputed fact or question of domestic law that is important to the resolution of an appellate issue," but "it cannot take judicial notice of facts necessary to establish an element of the [charged] offense." *United States v. Paul*, 73 M.J. 274, 280 (C.A.A.F. 2014); *see also* Mil. R. Evid. 201(b) ("The military judge may judicially notice a fact that is not subject to reasonable dispute because it: [ ] is generally known universally, locally, or in the area pertinent to the event; or [ ] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); Mil. R. Evid. 202(a) ("The military judge may take judicial notice of domestic law.").

### 2. Analysis

Appellant contends we may consider the documents he moved to attach—Judge Wright's biography and the declaration from Mr. PC—because Judge Wright's qualification to preside over his court-martial was raised by the record, but is not fully resolvable by the materials in the record. *See Jessie*, 79 M.J. at 442. The Government responds to the effect that we may not consider

---

[4] *Jessie* addressed the version of Article 66(c), UCMJ, in effect prior to 1 January 2019. The equivalent provision is located at Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), in the current version of the statute. *See Manual for Courts-Martial, United States* (2019 ed.), App. 2, at A2-27.

[5] U.S. CONST. amend. VIII.

this material because nothing in the "entire record" as defined by *Jessie* raised an issue regarding Judge Wright's impartiality on the basis Appellant asserts on appeal—her civilian employment. The Government further contends that even if we find the issue of the military judge's impartiality was raised, that question is fully resolvable from the record based on Judge Wright's statement she was aware of no grounds for challenge and the fact that neither party challenged her.[6]

Appellant alternatively contends that we may take judicial notice of Judge Wright's civilian employment as a fact not reasonably subject to dispute. *See Paul*, 73 M.J. at 280. In response, the Government argues that in light of *Jessie* this court should take judicial notice when necessary to resolve an issue raised by the record, but not to *create* an appellate issue.

Whether *Jessie* permits or prohibits our consideration of Judge Wright's civilian employment and Mr. PC's declaration is not clear. The CAAF has yet to apply *Jessie* to a situation such as this. The three CAAF opinions that have addressed *Jessie* in any depth may be readily distinguished. Two of them, including *Jessie* itself, involved the appellant's attempts to supplement the record with respect to the conditions of post-trial confinement. *Willman*, 81 M.J. at 357; *Jessie*, 79 M.J. at 439. The third involved the attachment of documents necessary to resolve an issue with court member selection that was apparent from the record. *United States v. King*, ___ M.J. ___, No. 22-0008, 2023 CAAF LEXIS 112, at *10–12 (C.A.A.F. 23 Feb. 2023). In contrast, in the instant case nothing in the "entire record" as defined by *Jessie*—the record of trial and matters attached for appellate review pursuant to Rule for Courts-Martial (R.C.M.) 1112(b) and R.C.M. 1112(f), respectively—contains any information about the military judge's civilian employment.

However, this court recently addressed an analogous situation in *United States v. Brissa*, involving the belated discovery that the assistant trial counsel's license to practice had been suspended at the time of the court-martial. No. ACM 40206, 2023 CCA LEXIS 97, at *8–12 (A.F. Ct. Crim. App. 27 Feb. 2023) (unpub. op.). In *Brissa*, this court presumed for purposes of its analysis that *Jessie* did not foreclose consideration of materials from outside the record that formed the basis of the prosecutorial misconduct allegation on appeal. *Id.* at *10–12. For some similar reasons, and an additional one, we will also

---

[6] In addition, the Government argues that even if we find *Jessie* does not bar our consideration of Judge Wright's civilian employment as a general matter, we should still decline to consider Mr. PC's summary account of his motion to recuse Judge Wright in the prior court-martial until Appellant first explains why a transcript of those proceedings is unavailable. We are not persuaded by this argument and find it does not require additional analysis.

assume for purposes of our analysis that we may consider the additional matter Appellant has introduced in the instant appeal.

First, it is at least arguable that when Judge Wright stated for the record that she had been properly certified, sworn, and detailed to Appellant's court-martial, and was not aware of any matter that might be a ground for challenge against her, she raised the issue of her qualifications to serve as the military judge. Similar to the assistant trial counsel's announcement of his qualifications in *Brissa*, the evident purpose of Judge Wright's statements in Appellant's court-martial was "to affirmatively assure the court-martial participants and spectators, and capture for the record," that she was qualified for her role. *See id.* at *11.

Second, as this court observed in *Brissa*, "to hold that CCAs are unable to consider evidence adduced after trial that critical participants . . . were in fact disqualified from their roles would seem to remove an important safeguard for the integrity of the military justice system." *Id.* (citations omitted). This concern applies with particular force to the military judge, whose expertise the law presumes and whose duty it is to ensure the accused receives a fair trial. *See United States v. Andrews*, 77 M.J. 393, 403 (C.A.A.F. 2018) (citation omitted); *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). Therefore, "we are inclined to err on the side of ensuring the fairness of the proceedings." *Brissa*, unpub. op. at *11.

We also consider a factor not present in *Brissa* that weighs in favor of presuming we may consider evidence of Judge Wright's civilian employment—our ability to take judicial notice. As appellate military judges, we may take judicial notice of facts not reasonably subject to dispute and of domestic law. Mil. R. Evid. 201(b); Mil. R. Evid. 202(a). We find nothing in *Jessie* that purports to overrule the CAAF's prior recognition that a CCA may take judicial notice of undisputed facts or matters of domestic law that are "important to the resolution of an appellate issue." *Paul*, 73 M.J. at 280. Accordingly, we find the United States District Court opinions Appellant cites establish Judge Wright, in her civilian capacity as an Assistant United States Attorney, represented the United States in several criminal actions in federal court between 2020 and 2022—a date range that encompasses Appellant's July 2021 court-martial. Thus, even if we did not consider Judge Wright's official biography, Appellant would still have an avenue to assert a factual basis for his asserted disqualification issue.[7]

---

[7] *Cf. United States v. Wilson*, No. ACM 39387, 2021 CCA LEXIS 284, at *38–39 (A.F. Ct. Crim. App. 10 Jun. 2021) (unpub. op.) (citing *In re Al-Nashiri*, 921 F.3d 224 (D.C.

Furthermore, as in *Brissa*, our presumption that we may consider the additional material does not unfairly prejudice the Government because we conclude Appellant does not prevail on the substance of his claim. *See Brissa*, unpub. op. at \*12.

## B. Military Judge Disqualification

### 1. Law

We review a military judge's decision whether to recuse herself for an abuse of discretion. *United States v. Sullivan*, 74 M.J. 448, 453 (C.A.A.F. 2015) (citations omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). However, "[w]hen an appellant . . . does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

"An accused has a constitutional right to an impartial judge." *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999) (citations omitted). R.C.M. 902 governs disqualification of the military judge. R.C.M. 902(b) sets forth five specific circumstances in which a "military judge shall [ ] disqualify himself or herself." In addition, R.C.M. 902(a) requires disqualification "in any proceeding in which th[e] military judge's impartiality might reasonably be questioned." Disqualification pursuant to R.C.M. 902(a) is determined by applying an objective standard of "whether a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned." *Sullivan*, 74 M.J. at 453 (citing *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012)).

"There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle . . . ." *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001) (citation omitted). "Although a military judge is to 'broadly construe' the grounds for challenge, he should not leave the case 'unnecessarily.'" *Sullivan*, 74 M.J. at 454 (quoting R.C.M. 902(d)(1), Discussion).

---

Cir. 2019)) (citing facts from federal circuit court opinion addressing judicial disqualification in analyzing alleged disqualification of the same judge in a court-martial), *rev. denied*, ___ M.J. ___, No. 21-0358, 2021 CAAF LEXIS 1075 (C.A.A.F. 16 Dec. 2021).

"[N]ot every judicial disqualification error requires reversal." *Martinez*, 70 M.J. at 158 (citation omitted). Appellate courts consider three factors to determine whether a disqualification error warrants a remedy: (1) specific injustice to the appellant; (2) encouragement to judges and litigants to examine possible grounds for disqualification more carefully and disclose them more promptly; and (3) risk of undermining public confidence in the military justice system. *United States v. Uribe*, 80 M.J. 442, 449 (C.A.A.F. 2021) (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 868 (1988), and *Martinez*, 70 M.J. at 159–60).

### 2. Analysis

#### a. Standard of Review

As an initial matter, notwithstanding the Defense's failure to challenge Judge Wright at the court-martial, Appellant contests the application of the plain error standard of review. Appellant argues that in a case such as this, where the military judge failed to disclose the potential basis for disqualification to the counsel, we should review her failure to recuse herself for an abuse of discretion. We decline to follow this course.

Our superior court has held plain error applies when an appellant "does not raise the issue of disqualification until appeal." *Martinez*, 70 M.J. at 157 (citing *Jones*, 55 M.J. at 320). The CAAF did not qualify the application of that standard, and by the plain meaning of its words, *Martinez* governs the situation before us. Relying on *Martinez*, this court has applied plain error review in analogous cases where another military judge did not disclose the alleged potential basis for disqualification or recusal at trial. *See United States v. Wilson*, No. ACM 39387, 2021 CCA LEXIS 284, at *36 (A.F. Ct. Crim. App. 10 Jun. 2021) (unpub. op.), *rev. denied*, ___ M.J. ___, No. 21-0358, 2021 CAAF LEXIS 1075 (C.A.A.F. 16 Dec. 2021); *United States v. Snyder*, No. ACM 39470, 2020 CCA LEXIS 117, at *57 (A.F. Ct. Crim. App. 15 Apr. 2020) (unpub. op.); *see also United States v. Springer*, 79 M.J. 756, 759 (A. Ct. Crim. App. 2020) (relying on *Martinez* and applying plain error review to a basis for recusal the defense did not discover until after trial).

Appellant cites *United States v. Fazio*, 487 F.3d 646, 652 (8th Cir. 2007), as contrary persuasive authority. *Fazio* involved two alleged bases for the trial judge's recusal, neither of which were disclosed by the trial judge or discovered by the defense before the appeal. *Id.* The circuit court stated it was "unclear" whether the plain error or abuse of discretion standards should apply; the court reviewed one issue for plain error and the other for an abuse of discretion, and granted relief on neither. *Id.* at 652–54. Other than noting that the abuse of discretion standard would have applied if the matters had been litigated at the trial court, the circuit court did not explain its rationale. *Id.* at 652. We are not

persuaded *Fazio* undermines the applicability of *Martinez* or this court's prior application of plain error review in the instant circumstances.

The force of Appellant's argument is further lessened by the fact that Judge Wright's status as a reservist and her civilian employment were readily discoverable through the most rudimentary investigation by trial defense counsel—assuming they were not already aware of it. Appellant was represented at trial by two Air Force judge advocates—a circuit defense counsel and an area defense counsel. The declaration Appellant submitted from the Appellate Defense Division paralegal indicates Judge Wright's biography was generally available to any member of the Air Force Judge Advocate General's Corps.

Accordingly, we review the military judge's failure to recuse herself for plain error.

### b. Whether the Military Judge Plainly Erred

Appellant asserts the military judge erred by failing to recuse herself because a reasonable person might question her impartiality. *See* R.C.M. 902(a). "The test for identifying an appearance of bias is 'whether a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned.'" *Uribe*, 80 M.J. at 446 (quoting *Sullivan*, 74 M.J. at 453). Under the plain error standard of review, Appellant bears the burden to demonstrate the military judge not only erred, but the error was "plain" or "obvious." *See Martinez*, 70 M.J. at 157. We find Appellant fails to meet this standard.

A reasonable person knowing all the circumstances would know that a military judge takes an oath to perform their duties as a judge faithfully and impartially. *See* R.C.M. 807(b)(1)(A); Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 10.5.1.2 (18 Jan. 2019). A reasonable observer "would recognize that it is common for reserve military judges to have civilian legal positions—including as prosecutors or defense counsel—that must be left behind when they put on their uniform and perform their military judicial duties." *United States v. King*, No. ACM 39583, 2021 CCA LEXIS 415, at *36 (A.F. Ct. Crim. App. 16 Aug. 2021) (unpub. op.), *aff'd on other grounds*, *King*, 2023 CAAF LEXIS 112, at *19). A reasonable person would perceive no intersection between Appellant's court-martial and Judge Wright's civilian employment at the United States Attorney's Office or with the Department of Justice more generally. They would also note, as reflected in Judge Wright's biography, that she had substantial prior experience as an Air Force defense counsel, including two years as an area defense counsel, two years as a senior defense counsel, and over three years as a reserve appellate defense counsel.

A reasonable observer would also notice Judge Wright made no substantial rulings against the Defense in the course of the court-martial. They would note

this was a relatively brief court-martial involving guilty pleas pursuant to a plea agreement. They would note it involved a mandatory dishonorable discharge and maximum 24-month concurrent terms of confinement for two sexual offenses perpetrated on a sleeping victim, including sexual assault. Judge Wright adjudged 24 months of confinement for the sexual assault and 6 months for the indecent recording; an observer aware of all the circumstances would know Appellant would have faced a maximum term of 35 years in confinement for these offenses without the benefit of the plea agreement. We are not persuaded a reasonable observer would have perceived any symptoms of partiality on the part of Judge Wright.

We are also not persuaded Mr. PC's declaration demonstrates plain error in Appellant's case. The mere fact that different trial defense counsel unsuccessfully challenged Judge Wright in another case based on her civilian employment does not establish that a neutral, reasonable observer would question Judge Wright's impartiality. As this court observed in *King*:

> We recognize that the law does not view recusal subjectively through the eyes of those with a stake in the outcome of the proceeding. Rather, recusal is viewed through the eyes of a reasonable person who is detached from the outcome of the litigation but is concerned about public confidence in the judicial process to reach that outcome.

*King*, unpub. op. at *35. "Of course, '[a] . . . judge has as much obligation not to . . . [disqualify] himself when there is no reason to do so as he does to . . . [disqualify] himself when the converse is true.'" *United States v. Kincheloe*, 14 M.J. 40, 50 n.14 (C.M.A. 1982) (alterations and omissions in original) (citations omitted). Mr. PC's declaration indicates Judge Wright had previously determined her civilian employment did not disqualify her, contrary to a litigant's motion. Appellant has presented no evidence that determination has ever been reversed or contradicted by judicial authority.

Appellant contrasts the extensive voir dire and on-the-record ruling by the reserve military judge in *King* with Judge Wright's omission of any potential ground for challenge against herself in this case. *See King*, unpub. op. at *30–31. It is true that this court cited the "thoroughly developed record" in *King* as serving to help dispel "any initial concern[s] about [the military judge's] civilian employment" with the Department of Justice. *Id.* at *35, *37. However, the comparison is somewhat inapposite because trial defense counsel in *King* raised the issue of disqualification, whereas Appellant's trial defense counsel did not. Moreover, other aspects of *King* reinforce our conclusion of no plain error in the instant case. A reasonable person might conclude the appearance

of a possible conflict was more pronounced in *King* than in Appellant's case,[8] yet in *King* this court found no error under the less-demanding abuse-of-discretion standard of review. *Id.* at *37. Also, at a general level, *King* indicates that even a leadership position within federal law enforcement at the Department of Justice is not per se disqualifying for a reserve military judge. Moreover, *King* favorably cited multiple factors that are also present in the instant case, including the absence of any connection between the court-martial and the judge's civilian employment, and the military judge's "significant experience in different roles in the military justice system," including as a defense counsel. *Id.* at *36.

Considering the totality of the circumstances, measured by the objective standard of a reasonable but neutral observer, we are not persuaded Judge Wright plainly or obviously erred by failing to recuse herself on the grounds that her impartiality might reasonably be questioned in Appellant's case.

### c. Assuming Plain Error, Whether Relief is Warranted

Assuming for purposes of analysis the military judge did err by failing to recuse herself, we find the *Liljeberg* factors do not weigh in favor of setting aside the findings or sentence.

First, we find no indication of specific injustice to Appellant. Appellant pleaded guilty and was sentenced in accordance with a favorable plea agreement. Judge Wright made no substantial rulings against the Defense. Other than Judge Wright's alleged disqualification, Appellant has raised no other assignments of error. Appellant notes Judge Wright imposed 24 months of confinement for the sexual assault—the maximum term permitted under the plea agreement. However, Appellant does not contend his sentence is inappropriately severe, nor do we find it so. Rather than partiality, the sentence suggests Appellant obtained a favorable plea agreement for a serious crime. Appellant contends Judge Wright's failure to disclose her civilian employment on the record "bears consideration," but he does not identify any specific information he lacks as a result that would have strengthened his disqualification argument at trial or on appeal. Appellant further cites the brevity of his court-martial; however, we do not find this suggests any injustice, but rather that the court-martial proceeded as the parties expected it would. Accordingly, we find the first factor weighs against reversal.

---

[8] In *King*, the reserve military judge presided over a general court-martial for an alleged sexual assault on a minor, while serving in his civilian role as "supervisor of the Child Exploitation and Obscenity Section for the Criminal Division" of the Department of Justice. *King*, unpub. op. at *30–31.

We find the second factor—encouraging judges and litigants to examine and disclose potential grounds for disqualification more carefully—does not materially weigh either in favor of or against reversal. On the one hand, it would signal to reserve military judges in particular to disclose their civilian employment in an abundance of caution. On the other hand, as described above, and as Judge Wright and the counsel either knew or should have known, Judge Wright's status as a reservist and her position as an Assistant United States Attorney was information readily available to Air Force attorneys. It is arguable that granting relief would create a perverse incentive for trial defense counsel who were fully aware of the military judge's civilian employment to decline to raise the issue at trial, and instead wait to see how their client fared at the court-martial before springing the issue on appeal. In that way, granting relief could potentially *disincentivize* thorough exploration of such issues at the trial level.

Third, under the circumstances of this case, we find minimal risk that letting Appellant's conviction and sentence stand will undermine public confidence in military justice. To all appearances, the court-martial proceeded exactly as the parties expected in accordance with the plea agreement. Setting aside the findings or sentence where there has been no perceptible injustice to the appellant might instead foster the impression that the military justice system is inefficient and, at worst, rewards gamesmanship by the parties.

Accordingly, considering the three factors together under the totality of the circumstances, we find that setting aside the findings or sentence would not be warranted.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court